[Sac. No. 7984. In Bank. Apr. 16, 1974.]

CALIFORNIA WELFARE RIGHTS ORGANIZATION et al., Petitioners, v.
EARL W. BRIAN, as Secretary, etc., et al., Respondents,
JACKLYN JO SHELTON, Petitioner, v.
THE SUPERIOR COURT OF SHASTA COUNTY, Respondent;
MARIAN BABIARZ, as Director, etc., et al.,
Real Parties in Interest.

COUNSEL

Arthur L. Meader III, Rosalyn M. Chapman, Ralph Santiago Abascal, Jay-Allen Eisen, Edmund S. Schaffer and Eugene S. Swann for Petitioners.

Hanson, Bridgett, Marcus & Jenkins and George R. Moscone as Amici Curiae on behalf of Petitioners.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, N. Eugene Hill, Raymond M. Momboisse and John Fourt, Deputy Attorneys General, for Respondents and for Real Parties in Interest.

## OPINION

**BURKE, J.**—In these consolidated cases, certain welfare recipients have challenged the validity, under federal and state law, of welfare regulations issued by the state Department of Social Welfare, which regulations affect the assistance grant to pregnant mothers. We have concluded that the regulations at issue are invalid because they purport to consider, contrary to the probable intent of federal and state law, that the mother's body constitutes a "resource" of the fetus, the economic value of which "resource" may be deducted from the assistance grant otherwise payable to the mother upon pregnancy.

Petitioner California Welfare Rights Organization (CWRO) is an unincorporated association, representing recipients of aid to families with dependent children (AFDC); this petitioner brought an original action in the Court of Appeal seeking mandamus against respondents Brian (Secretary of the California Health and Welfare Agency) and Carleson (former Director of the Department of Social Welfare). Petitioner Shelton, a resident of Shasta County and a recipient of AFDC aid originally brought a class action against Babiarz, the Director of the Shasta County Welfare Department, and respondent Carleson, seeking prohibition to restrain enforcement of the regulations in issue. The trial court denied a preliminary injunction and entered an order which, in effect, permitted the department to continue to implement its regulations. Petitioner Shelton thereupon joined petitioner CWRO in its action in the Court of Appeal, requesting mandamus against respondents Brian and Carleson, and further sought to prohibit further proceedings in the Shasta County action. The Court of Appeal denied the consolidated petition, and petitioners ask this court to review the matter.

Eligibility for AFDC aid is determined by reference to a table, set forth in section 11452 of the Welfare and Institutions Code, which establishes certain "minimum basic standards of adequate care" depending upon the number of needy persons in the same family. Notwithstanding the amounts set forth in section 11452, however, actual aid payments are limited by another table, set forth in section 11450, which establishes certain "maximum aid" payments, depending upon the number of eligible needy persons in the same home. Under section 11450, the size of the grant is reduced by any nonexempt "income" of the aid recipient.

The instant case concerns the validity of a regulation promulgated by the department which purports to determine the existence of, and measure the extent of, an AFDC recipient's "income" to be deducted from his grant under section 11450. The regulation before us attempts to assess the value to an unborn child of the comforts he receives in his mother's womb. We think that, in the absence of express federal or state provisions on the subject, the instant regulation stretches the existing statutory concept of "income" or "resources" beyond the probable intent underlying those terms.

■ Initially, the parties do not dispute that AFDC assistance properly may be paid to pregnant mothers on behalf of their unborn children. Although the federal Social Security Act (42 U.S.C. § 601 et seq.) is silent on the question, providing for aid to dependent or needy "children" deprived of parental support, or to the relatives who care for them (see *id.*, § 606), regulations promulgated by the Department of Health, Education and Welfare (HEW) seem to permit (but not require) the states to provide for AFDC aid, with federal participation, to or on behalf of unborn children. HEW's regulations provide that "[f]ederal financial participation is available in . . . [p]ayments with respect to an unborn child when the fact of pregnancy has been determined by medical diagnosis . . . ." (45 C.F.R. § 233.90, subd. (c), subsec. (2)(ii).) As this language is contained in a subsection of section 233.90 entitled "federal financial participation" rather than in preceding subsections entitled "State plan requirement" or "Condition for plan approval," it seems probable that under federal law, AFDC payments to pregnant mothers on behalf of their unborn children are permissive, not mandatory. In other words, the states may elect to treat the unborn as other dependent, needy children in administering their AFDC plans.[1]

---

[1]Accord *Parks* v. *Harden,* 354 F.Supp. 620; *Alcala* v. *Burns,* 362 F.Supp. 180; *Doe* v. *Lukhard,* 363 F.Supp. 823; *Wilson* v. *Weaver,* 358 F.Supp. 1147. Evidently, only 19 states thus far have elected to provide additional AFDC benefits upon pregnancy.

California has elected to include unborn children in its AFDC plan. Although the applicable statutes refer generally to "needy child" or "children" (see Welf. & Inst. Code, §§ 11202, 11250), the department has, as early as 1949, interpreted these terms as including unborn children, and has provided that AFDC aid shall be paid in the event of pregnancy, although in a lesser amount than were the unborn child considered to be an additional member of the family unit. For example, under former Regulation 44-212.62, a family's "need amount" used for determining the size of the assistance payment was increased $21 monthly upon verification of pregnancy. This regulation remained in effect until 1971, when new regulations were promulgated following the passage of the Welfare Reform Act of 1971. The department's long-standing administrative practice of providing aid to, or on behalf of, the unborn child may, in the absence of any legislative intent to the contrary, be deemed approved by the Legislature and representative of existing state law. (See, e.g., *Pearson v. State Social Welfare Board,* 54 Cal.2d 184, 210 [5 Cal.Rptr. 553, 353 P.2d 33]; *City of Los Angeles* v. *Rancho Homes, Inc.,* 40 Cal.2d 764, 770-771 [256 P.2d 305]; *Coca-Cola Co.* v. *State Bd. of Equalization,* 25 Cal.2d 918, 921 [156 P.2d 1].)[2]

Following the passage of the Welfare Reform Act (which was silent regarding the subject of aid to the unborn), the department adopted two new regulations. Regulation 44-213.31 provides that, for purposes of AFDC aid, the unborn child shall be considered to be a needy person eligible for aid (without specifying the precise amount of aid to be paid on his behalf). If this regulation were the sole provision on the subject of grants to unborn children, its effect would be to require payment to a pregnant mother without income the full maximum grant otherwise specified for a family of two needy "persons" under section 11450 of the Welfare and Institutions Code.

However, the second regulation, Regulation 44-115.95, would substantially reduce the grant specified under section 11450. Acting solely in reliance upon federal and state provisions which authorize a grant

---

[2]Petitioners point out that, on four prior occasions (and as late as 1971) bills have been introduced to amend the Welfare and Institutions Code to expressly provide that the term "needy child" shall not include an unborn child. Each of these bills died in committee without reaching a vote; one such proposed bill resulted from the recommendation contained in a special committee report to the 1951 Legislature. Thus, we may reasonably assume that the Legislature has been aware of the department's administrative construction of the statutory provisions. Its failure to act to modify that construction is indicative of an intent to preserve benefits for unborn children. (See *Coca-Cola Co.* v. *State Bd. of Equalization, supra,* 25 Cal.2d 918, 922-923; *Cal. State Employees Assn.* v. *Trustees of Cal. State Colleges,* 237 Cal.App.2d 530, 536-537 [47 Cal.Rptr. 73].)

reduction by the amount of nonexempt "income" or "resources" available to the AFDC recipient (see 42 U.S.C. § 602, subd. (a), subsec. (7); 45 C.F.R. § 233.20, subd. (a), subsec. (3)(ii)(c); Welf. & Inst. Code, §§ 11450, 11008), the department sought to recognize and measure the value *to the fetus* of the "resources" (called "in-kind income" by the regulation) furnished it by the mother, in the form of reduced needs for food, clothing and shelter.

First, Regulation 44-115.9 (not directly challenged in this case) sets forth the department's estimated "in-kind income" value of particular need items—for example, a value of $76 monthly is specified for "housing" for a family unit consisting of two persons, and $83 monthly for a unit of three persons. The challenged regulation (44-115.95) provides that "When an unborn child is included in the FBU [family budget unit], the in-kind deduction [from the AFDC grant] shall be the total of the amounts by which the in-kind values for housing, utilities, food and clothing [Reg. 44-115.9] are increased as a result of including the unborn in the FBU." Since the in-kind value of housing for a three-person FBU is $83, the in-kind housing deduction would be $7 for a family consisting of a pregnant mother, her child in being, and her unborn child.

In petitioner Shelton's case, the application of Regulation 44-115.95 results in a substantial reduction in the grant which her family would otherwise receive. Prior to her pregnancy, her three-person family was entitled to a maximum grant of $235 per month (Welf. & Inst. Code, § 11450), less nonexempt "income." If, as required by Regulation 44-213.31, her unborn child were considered to be a "person," her family would receive the $280 maximum grant specified for a four-person family. Yet, under Regulation 44-115.95, her unborn child is deemed to receive "in-kind income" in the total amount of $35. Thus, in net effect, the Shelton family would receive an additional $10 monthly as a result of the pregnancy.[3]

■ It is well established that administrative regulations must conform to applicable legislative provisions, and that an administrative agency has no discretion to exceed the authority conferred upon it by statute. (*California Welfare Rights Organization* v. *Carleson,* 4 Cal.3d 445, 455 [93 Cal.Rptr. 758, 482 P.2d 670]; *Morris* v. *Williams,* 67 Cal.2d 733, 737 [63 Cal.Rptr. 689, 433 P.2d 697].) ■ In the instant case, the de-

[3]The department's regulations (Reg. 44-265.212) also provide for an additional special diet allowance of $9 maximum per month for pregnant mothers.

partment is charged with establishing regulations "not in conflict with the law" fixing statewide standards for the administration of all state or federally assisted aid programs. (Welf. & Inst. Code, § 10604, subd. (b).) We must determine, then, whether Regulation 44-115.95, and its concept of fetal "in-kind income," conflicts with state or federal law.

As we have seen, the state AFDC plan contemplates that aid is to be paid to a needy family in accordance with a schedule of maximum grants, depending upon the number of eligible needy persons in the family. (Welf. & Inst. Code, § 11450.) Since, by virtue of a long-standing departmental practice which we deem to be approved by the Legislature, an unborn child is considered to be eligible for AFDC assistance, the department's sole authority for making a deduction from the AFDC grant specified in section 11450 for each eligible recipient would be that there exists "income" or "resources" which may, under federal and state provisions cited above, be taken into account. None of these provisions, however, defines these terms; the state provision simply refers to "income" as including "the value of currently used resources." (Welf. & Inst. Code, § 11008.)

We do not believe it to be probable that the Legislature, in using the general terms "income" and "resources" intended those terms to be employed to exclude, or reduce the AFDC grant to, unborn children. In essence, the additional AFDC grant is really made to the mother, not her unborn child, for the present and future needs arising from pregnancy. Seen in this light, it would be anomalous to hold that the pregnancy generates "income" or "resources" of benefit to anyone, mother or child. We do not mean to suggest that the Legislature could not properly consider the question whether, from a standpoint of policy, the grant to pregnant mothers should be terminated or reduced. In view of the apparent lack of federal guidelines on the matter, that question would appear to remain a matter of state legislative policy. Yet the applicable statutes, as we construe them, disclose no intent to treat the unborn any differently than other children. Given the long-standing policy in this state to provide aid on behalf of the unborn child, we conclude that such a child is entitled to be treated as any other "person" for purposes of computing AFDC aid under section 11450.

We conclude that the following relief prayed for by petitioners should be granted: (1) Let a writ of prohibition issue restraining further proceedings by respondent Superior Court of Shasta County to enforce Regulation

44-115.95; (2) Let a writ of mandate issue ordering respondents Earl W. Brian and David B. Swoap to rescind Regulation 44-115.95 in its entirety.

Wright, C. J., McComb, J., Mosk, J., Clark, J., Devine, J.,* and Molinari, J.,* concurred.

*Assigned by the Chairman of the Judicial Council.