[Civ. No. 14455. Third Dist. June 15, 1976.]

ROBERT OLIVA, an Incompetent Person, etc., et al.,
Plaintiffs and Respondents, v.
DAVID B. SWOAP, as Director, etc.,
Defendant and Appellant.

132

**COUNSEL**

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, N. Eugene Hill, John Fourt and James D. Claytor, Deputy Attorneys General, for Defendant and Appellant.

Clifford Sweet, F. Hayden Curry, Mary H. Mocine, Gary J. Grimm, Eric P. Gold, Jay Eisen and Ralph Santiago Abascal for Plaintiffs and Respondents.

OPINION

**PUGLIA, P. J.**—Robert Oliva, an adult incompetent, by Villa F. Oliva, his guardian ad litem, and Catherine Sargent, on behalf of themselves and a class of persons similarly situated (hereinafter "plaintiffs"), filed this action in Sacramento Superior Court for writ of mandate, injunction and declaratory relief. They pray that defendant, the Director of the State Department of Social Welfare (hereinafter "Department"),[1] be prohibited from reducing current grants to welfare recipients who have fully reported all facts material to an accurate determination of their grants in order to recover overpayments caused by county administrative errors. This practice is referred to as "grant adjustment."

The trial court granted plaintiffs' motion for summary judgment, declaring the use of grant adjustments to recoup such overpayments contrary to law and void, and permanently enjoining defendant from using, and directing defendant to discontinue, the grant adjustment method in such cases. Defendant appeals, contending (1) that plaintiffs failed first to exhaust their administrative remedies, and (2) that Welfare and Institutions Code section 11004[2] authorizes use of grant adjustments to recover overpayments attributable to county administrative errors.

Plaintiffs represent themselves and a class of persons who receive cash grants under public assistance programs. At the time the action was commenced, these programs included aid to the disabled (former § 13500 et seq.), aid to the blind (former § 12500 et seq.), old age security (former § 12000 et seq.) and aid to families with dependent children (§ 11200 et seq.).[3] Between June 1971 and March 1973, plaintiff Oliva, a resident of Alameda County receiving aid to the disabled cash grants,

---

[1]Effective February 1, 1974, the State Department of Social Welfare was renamed Department of Benefit Payments (Welf. & Inst. Code, § 10550; Stats. 1973, ch. 1212, § 448, p. 2883). The complaint, filed September 21, 1972, named Robert B. Carleson, then Director of the State Department of Social Welfare, as defendant. Thereafter Carleson's successor, David B. Swoap, was substituted as defendant in his stead. Although Swoap has since been replaced as director, his successor has not been substituted as defendant in his place. (See Code Civ. Proc., § 385, subd. (a); rule 48, Cal. Rules of Court.)

[2]All citations are to the Welfare and Institutions Code unless otherwise noted.

[3]Administration of the first three programs listed was assumed by the federal Department of Health, Education and Welfare on January 1, 1974. However, the State of California still contributes substantial amounts to them in the form of "State Supplemental Payments." (See, generally, *California League of Senior Citizens, Inc.* v. *Brian* (1973) 35 Cal.App.3d 443, 445-447 [110 Cal.Rptr. 809], and new §§ 12000-12400.)

received overpayments in the amount of $56 per month. Between November 1971 and March 1972, plaintiff Sargent, a resident of Contra Costa County receiving old age security cash grants, received excess payments in the amount of $36 per month. It is undisputed that these overpayments (except those made to Sargent in November. and December 1971) were due solely to administrative errors on the part of the counties involved.

Both named plaintiffs were notified by their respective counties that future monthly grants would be reduced to make up for these erroneous overpayments. Both plaintiffs thereupon individually requested an administrative hearing as provided for in sections 10950-10965. Decisions adverse to plaintiffs were entered by the defendant director on March 8, 1973, in Oliva's case and on November 22, 1972, in Sargent's case. Both decisions authorized the counties involved to offset the past overpayments as to which there had been full reporting by reductions in future cash grants over a period of six months.[4] Neither named plaintiff has sought judicial review of the adverse administrative decision. While their administrative hearings were pending and before the director's decisions noted above were entered, the instant proceeding was commenced.

## I.

A recipient of welfare benefits who is dissatisfied with any action of the county relating to his receipt of aid may obtain a "fair hearing" before a referee employed by the Department. (§§ 10950, 10953.) After receiving the referee's proposed decision, the director may adopt it (§ 10959) or may make an independent determination based on the hearing record. (§§ 10959-10961.) Section 10962 permits the recipient to seek judicial review of the director's final decision by a proceeding in administrative mandamus (Code Civ. Proc., § 1094.5).

Plaintiffs commenced these proceedings prior to the administrative determinations in their respective cases. ▮ Defendant argues that plaintiffs thereby failed to exhaust their administrative remedies and are foreclosed by the administrative determinations against them which, in the absence of a proceeding for judicial review, become final one year after entry. (§ 10962.)

---

[4]The director found that Sargent had not discharged her reporting responsibilities during the months of November and December of 1971 and authorized the county to offset the resulting $72 overpayment against her future cash grants within the period of one year next succeeding. (See § 11004, subd. (b).)

■ It is axiomatic that "where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715].) "[E]xhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts." (*Id.,* at p. 293.)

However, in *Ramos* v. *County of Madera* (1971) 4 Cal.3d 685 [94 Cal.Rptr. 421, 484 P.2d 93], the Court formulated a refinement of the doctrine of exhaustion of administrative remedies where class relief is sought in cases otherwise controlled by the procedures set forth in sections 10950-10965. In the *Ramos* case, plaintiffs, recipients of welfare aid, in behalf of themselves and a class similarly situated, sought injunctive and declaratory relief, as well as damages for the individually named plaintiffs for tortious acts allegedly committed by county welfare officials. The complaint was filed before the final determination of the administrative hearing requested by the named plaintiffs to contest termination of their welfare benefits. The Supreme Court pointed out that the procedure for hearing contained in sections 10950-10965 "is premised on an individualized treatment of claims for aid. . . . In no section of this chapter (Welf. & Inst. Code, §§ 10950-10965) is there provision for class relief. It is the *individual* who must apply for a hearing, regarding *his* application for or receipt of aid. He must do so in person or through an *authorized* representative. It is clear that the hearing scheme established by the Legislature does not contemplate class actions." (Original italics.) (*Ramos* v. *County of Madera, supra,* at pp. 690-691.) The Court concluded that there was "no failure to exhaust an administrative *remedy* for class relief, for no such administrative remedy existed." (Original italics.) (*Ibid.*)

■ As in the *Ramos* case, the plaintiffs do not seek in this action to secure payment of welfare benefits. Rather, they seek declaratory and injunctive relief and mandate in order to establish the illegality of grant adjustments and to prohibit continued resort to that method of recouping overpayments due to administrative error where the recipient has fully reported. The provisions for hearing contained in the Welfare and Institutions Code do not provide for the relief sought by these plaintiffs. " 'Sections 10957 and 10961 refer merely to decisions by the department that a particular applicant is entitled to services or financial aid. Section 10963 requires the county welfare director to "comply with and execute" such decisions, but they have no binding effect on the rights of future

applicants.' " (*Ramos* v. *County of Madera, supra,* 4 Cal.3d, at p. 691, fn. 5, quoting from *Diaz* v. *Quitoriano* (1969) 268 Cal.App.2d 807, 812 [74 Cal.Rptr. 358].) " 'Threat of future action can only be inferred from that which occurred in the past. And if such past actions were illegal, and circumstances show that they' are likely to reoccur, injunction (or mandate) is a proper remedy. . . .' " (*Ibid.,* quoting from *Professional Fire Fighters, Inc.* v. *City of Los. Angeles* (1963) 60 Cal.2d 276, 286 [32 Cal.Rptr. 830, 384 P.2d 158].)

Accordingly, we conclude that the doctrine of exhaustion of administrative remedies is not applicable here and thus is not a jurisdictional bar to this action.

## II.

Absent a statute so declaring, a recipient of public assistance is not liable for reimbursement of the state or. county for welfare aid properly paid. (*Ogdon* v.' *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 192, 199-200 [113 Cal.Rptr. 206, 520 P.2d 1022]; *Webb* v. *Swoap* (1974) 40 Cal.App.3d 191, 195 [114 Cal.Rptr. 897].) The Department has adopted regulations authorizing counties to use the grant adjustment method to recoup money paid erroneously through county administrative error even though the recipient has fully met his reporting responsibilities.[5] These regulations were promulgated under the director's statutory authority, consistent with the law fixing standards for the administration of public social services (§ 10604), "to implement, interpret, or make specific the law enforced by the department" (§ 10554) through "regulations . . . affecting the purposes, responsibilities, and jurisdiction of the department" (§ 10553).

"It, is well established that administrative regulations must conform to applicable legislative provisions, and that an administrative agency has no discretion to' exceed the authority conferred upon it by statute." (*California Welfare Rights Organization* v. *Brian* (1974) 11 Cal.3d 237, 242 [113 Cal.Rptr. 154, 520 P.2d 970].) The parties disagree as to the existence vel non of statutory authority for the grant adjustment method of recoupment contained in the regulations of the department. Both sides to this action rest their respective arguments on

---

[5]See, e.g., the following regulations in effect at the time of the events described in the complaint: California State Department of Social Welfare, Manual of Policies and Procedures, Eligibility and Assistance Standards, regulations 44-333.1.12b, 44-335.1.11, 44-335.2.22, 44-335.2.24.

divergent interpretations of section 11004. The preamble to that section requires that public assistance programs "shall be administered fairly to the end that all persons who are eligible and apply for such public social services shall receive the assistance to which they are entitled promptly, with due consideration for the needs of applicants and the safeguarding of public funds." After providing that an applicant for or recipient of public aid "shall be informed as to the provisions of eligibility and his responsibility for reporting facts material to a correct determination of eligibility and grant" the section in part provides: "(c) Any person who makes full and complete disclosure of those facts as explained to him . . . is entitled to rely upon the award of aid as being accurate, and that the warrant he receives correctly reflects the award made, except that the county paying the aid shall be allowed a period of six months following the month of payment, or six months following the hearing provided in subdivision (e), within which to adjust any errors or changes in amount of grant resulting from changes in income or need which occur too late to be reflected in the grant for the current month. Whenever possible, adjustments or overpayments shall be prorated evenly over the adjustment period."[6]

The dispute focuses upon the exception in subdivision (c) of section 11004 permitting the county "to adjust any errors or changes in amount of grant resulting from changes in income or need which occur too late to be reflected in the grant for the current month." The defendant contends the quoted language creates two distinct factual categories in which overpayments are collectible where reporting responsibilities have been satisfied by the recipient. It is argued that the first category consists of overpayments due to "any errors" and includes county administrative error such as occurred here; the second discrete category consists of "changes in amount of grant resulting from changes in income or need" occurring too late to be reflected in the current grant.

---

[6]Subdivision (e) of section 11004 provides: "Current grants may be reduced because of prior overpayments only if the recipient has income or resources available in the amount by which the county proposes to reduce payment; except that where there is evidence which clearly establishes that a recipient willfully withheld information about his income or resources, such income or resources may be considered in the determination of need to reduce the amount of the grant in current or future periods. Prior to effecting any reduction of current grants to recover prior overpayments, the recipient shall be advised of the proposed reduction and of his entitlement to a hearing on the propriety of the reduction. In no event shall the grant to a needy child be reduced unless the parents or other responsible persons have sufficient available resources or income to meet the current needs of the needy child according to the department standard during the period of reduction."

Through briefing and oral argument, plaintiffs took the position that the exception in subdivision (c) of section 11004 creates but a single contingency in which overpayments can be recovered; that the words "errors" and "changes" are each qualified by the language immediately following the latter so that overpayments, whether attributable to "error" or to "change," can be recouped only where they result from misestimation or misconception of the *recipient's* financial circumstances.[7] Stated succinctly, plaintiffs contended that the phrase "any errors" has no independent meaning.[8]

■ It is a well established rule of statutory construction that " 'relative or modifying phrases are to be applied to the words immediately preceding them and are not to be construed as extending to more remote phrases' " (*People* v. *Baker* (1968) 69 Cal.2d 44, 46 [69 Cal.Rptr. 595, 442 P.2d 675]; *People* v. *Cruz* (1974) 12 Cal.3d 562, 566 [116 Cal.Rptr. 242, 526 P.2d 250]), " 'unless the context or the evident meaning of the statute requires a different construction.' " (*Elbert, Ltd.* v. *Gross* (1953) 41 Cal.2d 322, 326-327 [260 P.2d 35].)

■ Applying the rule just quoted, we conclude that the interpretation of section 11004 advanced by defendant is correct, harmonizing as it does the various parts of the section. In that connection we observe that the right to recover overpayments from fully reporting recipients is circumscribed by safeguards designed to insure that the recipient will not thereby be deprived of subsistence (§ 11004, subd. (e), fn. 6, *ante*, p. 137), and furthermore must be effected, if at all, within a period of six months (§ 11004, subd. (c)). These limitations are consistent with one objective of the statute, set forth in the preamble to section 11004, requiring that public assistance programs be administered "fairly . . . with due

---

[7]Although not essential to the decision in that case, the court in *Ogdon* v. *Workmen's Comp. Appeals Bd.*, *supra*, 11 Cal.3d 192, observed that the subdivisions of section 11004 "provide for *adjustments in current or future grants* where mistakes have been made in making payments (county) or in full disclosure (recipient)." (Original italics.) (P. 200.)

[8]After oral argument, plaintiffs advised the court by letter that they no longer adhere to this interpretation of section 11004, subdivision (c). Instead, plaintiffs now urge that the word "errors" refers to "certain errors which were an inherent and unavoidable part of the grant computation system in effect when the statute was enacted." That system, plaintiffs explain, permitted counties to use concurrent budgeting, a method requiring advance estimation of a recipient's monthly income, to determine the amount of the grant. Plaintiffs concede, however, that counties were not compelled to use that system but were also permitted to compute grants by prior month budgeting, a more accurate method than concurrent budgeting because it does not involve estimation of income. No authority is furnished in support of this novel interpretation of the section, the highly speculative quality of which is not relieved by its obvious resourcefulness.

consideration for the needs of applicants . . . ." No less important an objective, however, is the requirement, also stated in the preface to section 11004, that the administration of such programs be conducted with due regard for the "safeguarding of public funds." The recovery of public funds erroneously paid to recipients due to county administrative error is implementary of that objective. Moreover, it is authorized by the plain meaning of section 11004 subject to limitations which adequately safeguard the needs of recipients consistent with the mandate of the statute.

The grant adjustment procedure employed herein pursuant to regulations adopted by the Department is clearly authorized by statute. Accordingly, the trial court erred in granting plaintiffs' motion for summary judgment.

The judgment is reversed.

Paras, J., concurred.

**FRIEDMAN, J.**—I concur. I am not convinced that the court's syntactical analysis of section 11004, subdivision (c), reflects the Legislature's objective. The statute's phraseology is ambiguous; has been on the books during a decade of welfare controversy; has engendered uncertainty and upset affecting administrators and recipients; has stimulated incessant lawsuits and judicial involvement; has never stimulated legislative clarification. The interpretation sought by plaintiffs is no better than that asserted by the department. I would sustain the department's regulation on the theory that it represents one of several available interpretations of a murky statute. (*Ralphs Grocery Co.* v. *Reimel* 69 Cal.2d 172, 176 [70 Cal.Rptr. 407, 444 P.2d 79].)

A petition for a rehearing was denied July 9, 1976, and respondents' petition for a hearing by the Supreme Court was denied August 26, 1976. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.