594 F.2d 756
 PLUMAS COUNTY BOARD OF SUPERVISORS and Supervisors Larry
Dean, Russell Papenhausen, Joe W. Crivello, Ole
Olsen and Leonard Ross, Plaintiffs-Appellants,
v.
Joseph A. CALIFANO, Jr., Secretary of the Department of
Health, Education and Welfare, Defendant-Appellee.
 No. 77-1280.
 United States Court of Appeals,
Ninth Circuit.
 April 3, 1979.
 
 Baird B. McKnight (argued), Quincy, Cal., John H. Findley (argued), Sacramento, Cal., for plaintiffs-appellants.
 Edward H. Levi, U. S. Atty. Gen., Washington, D. C., John F. Jones, Atty. (argued), of Dept. of Justice, Washington, D. C., for defendant-appellee.
 Asher Rubin (argued), San Francisco, Cal., David F. Charkin (argued), Riverside, Cal., for appellee-respondent.
 On Appeal from the United States District Court for the Eastern District of California.
 Before MERRILL and CHOY, Circuit Judges, and MURRAY,* District Judge.
 MERRILL, Circuit Judge:
 
 
 1
 The question presented here is whether Plumas County, California, has standing to challenge the assistance payments it is required to make to pregnant needy women under California's program for Aid to Families with Dependent Children (AFDC). The county contends that under federal law unborn children cannot qualify as dependent children, and that the state, receiving federal funding, cannot provide otherwise. Bringing suit through its Board of Supervisors, it seeks injunctive and declaratory relief establishing that it is not legally obligated to make such payments.
 
 Background
 
 2
 Subchapter IV of the Federal Social Security Act, 42 U.S.C. §§ 601, Et seq. (the Act), authorizes annual appropriations for payments to states that have formulated plans approved by the Secretary of Health, Education and Welfare (HEW) for aid to needy families with children. The manner in which the federal AFDC operates was explained by the Supreme Court in King v. Smith, 392 U.S. 309, 316-17, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968), as follows:
 
 
 3
 "The AFDC program is based on a scheme of cooperative federalism * * *. It is financed largely by the Federal Government, on a matching fund basis, and is administered by the States. States are not required to participate in the program, but those which desire to take advantage of the substantial federal funds available for distribution to needy children are required to submit an AFDC plan for the approval of the Secretary of Health, Education, and Welfare (HEW) * * *. The plan must conform with several requirements of the Social Security Act and with rules and regulations promulgated by HEW * * *."
 
 
 4
 California has elected to participate in the AFDC program. Its plan, the Burton-Miller Act, California Welfare & Institutions Code §§ 11200, Et seq., has received the approval of the Secretary. The plan is county administered and state supervised, with the counties acting as agents for the state in making the prescribed payments. County of Marin v. Martin, 43 Cal.App.3d 1, 3, 117 Cal.Rptr. 364, 365 (1974). Pursuant to the Act, federal financial participation is available to pay 50 percent of the cost of AFDC grants made under the state plan. Pursuant to California Welfare & Institutions Code § 15200(a), the state pays 67.5 percent of the nonfederal share of the cost, with the county picking up the balance. Thus, where federal assistance is available the cost of making the payments is allocated 50 percent to the federal government, 33.75 percent to the state and 16.25 percent to the county.
 
 
 5
 For over thirty years HEW, in approving state plans, has allowed states, by regulation, the option of including benefits to pregnant women. 45 C.F.R. § 233.90(c)(2)(ii). HEW does not require such payments, but will match state benefit grants made to pregnant needy women. Plumas County challenges this regulation and practice.[1] It contends that the federal regulation is invalid, since it is contrary to the Social Security Act. It contends that the validity of the state plan, by statute or regulation, is dependent upon the lawful continuation of federal matching funds and that if the federal regulation is held invalid the state plan for unborn children will fall with it.[2]
 
 
 6
 The district court rendered judgment for appellee. It held, first, that California's AFDC statutory and regulatory provisions required payment to needy pregnant women independent of federal law, placing a responsibility upon the county without regard to the existence of federal matching funds; second, that since the county's duty to contribute under state law existed independently, the supervisors had suffered no grievance by virtue of the federal regulation and had no standing to challenge it. We agree.
 
 State Law
 
 7
 In California Welfare Rights Organization v. Brian, supra, note 1, 11 Cal.3d 237, 113 Cal.Rptr. 154, 520 P.2d 970, Cert. denied, 419 U.S. 1022, 95 S.Ct. 497, 42 L.Ed.2d 296 (1974), the California Supreme Court, in invalidating a state regulation reducing aid to the unborn, took note of the option offered by HEW respecting pregnant women. The court noted that since 1949 California law has included unborn children in its AFDC plan. The court treated the regulation providing for payment to the unborn, California Regulation EAS 44-213.31, as having been approved by the legislature in the absence of any contrary intent. 11 Cal.3d at 241, 113 Cal.Rptr. 154, 520 P.2d 970.
 
 
 8
 One year later, in Burns v. Alcala, 420 U.S. 575, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975), the Supreme Court held that an unborn child is not a "dependent child" as defined in the Social Security Act, 42 U.S.C. § 606(a), and that a state cannot be required to provide benefits to pregnant women in order to qualify for federal matching funds.
 
 
 9
 In Ross v. Superior Court, 19 Cal.3d 899, 141 Cal.Rptr. 133, 569 P.2d 727 (1977) Supra note 1, the California Supreme Court made it clear that Burns had no effect upon the state law as set forth in Brian. The court stated:
 
 
 10
 "(O)ur Brian decision was explicitly based on our interpretation of California's statutory welfare scheme (see 11 Cal.3d at pp. 240-241, 113 Cal.Rptr. 154, 520 P.2d 970) and thus is not affected by the Supreme Court's subsequent interpretation of federal legislation in Burns."
 
 
 11
 19 Cal.3d at 909 n. 7, 141 Cal.Rptr. at 140, 569 P.2d at 734.
 
 
 12
 Appellants point to California Welfare & Institutions Code § 11450, which specifies county obligation for AFDC and provides in part:
 
 
 13
 "If, when and during such times as the United States government increases or decreases its contributions in assistance of needy children in this state above or below the amount paid on July 1, 1972, the amounts specified in the above table shall be increased or decreased by an amount equal to such increase or decrease by the United States government, provided that no such increase or decrease shall be subject to subsequent adjustment pursuant to Section 11453."
 
 
 14
 Under this section, it is contended, if federal payments cease the county's obligation ceases as well. That section, however, has reference to computation of the federal contribution by a "person count," totalling the compensation paid to each recipient. Since 1965 California has not computed the federal share by this method. Instead, it computes the federal share on the basis of an aggregate 50 percent of the total cost to the state. See 42 U.S.C. § 1318. Thus, the federal and county dollar-per-person figures set forth in § 11450 no longer have significance.
 
 
 15
 We agree with the district court in its construction of California state law to the effect that Plumas County's obligations under present state law exist independently of federal funding. The existence of this independent obligation does not act to invalidate the state program by creating a conflict with federal law. A state plan is in conflict with the Act when it does not incorporate the Minimum requirements of 42 U.S.C. § 602. See 42 U.S.C. § 604. Cf. Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972), Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971), King v. Smith, supra.
 
 Federal Law
 
 16
 The Social Security Act, as we have noted, does not place any obligation on any state or any county to come forward with a suitable AFDC program, or to make payments under such program. It leaves the decision to the state and offers federal funds for the aid of those states that have established programs approved by the Secretary.
 
 
 17
 Plumas County attacks the federal regulation granting federal funds to reimburse states for payments to pregnant mothers, contending that the regulation is contrary to the terms of the Act as construed by the Supreme Court in Burns v. Alcala, supra. Apparently its belief is that regardless of California law, from a practical perspective the existence of the state program is dependent upon the continuation of federal funding, and that if the federal regulation should be held invalid the state program would necessarily terminate.
 
 
 18
 The validity of the federal regulation allowing matching funds on behalf of pregnant women was a question explicitly reserved by the Supreme Court in Burns. The Court noted that HEW did not construe the Act's definition of dependent child to include an unborn child, but rather construed 42 U.S.C. § 1302 as authorizing it "to fund benefits for unborn children as a form of temporary aid to individuals who are in the process of qualifying under federal standards." 420 U.S. at 586, 95 S.Ct. at 1187. The Court reserved the question of HEW's authority, stating: "We * * * have no occasion to decide (the question)." Id.
 
 
 19
 The district court also found no occasion to decide the question. It stated:
 
 
 20
 "(I)f Plumas County has a State-imposed obligation to pay assistance to pregnant needy women (through its Board of Supervisors), even in the absence of Federal financial participation in such assistance, plaintiffs have not been injured or affected by any provision of Federal regulations in a way which invalidation of those regulations will redress."
 
 
 21
 It quoted the Supreme Court in Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), to the following effect:
 
 
 22
 "(W)hen a plaintiff's standing is brought into issue the relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision. Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the (Constitution's) Art. III limitation." (Footnote omitted.)
 
 
 23
 The only effect invalidation of the HEW regulation respecting unborn children could have on Plumas County or its supervisors would be to deprive the county of federal assistance in meeting its state-created obligation and thus double the amount of the contribution it is obliged to make. We agree with the district court that Plumas County cannot claim to be aggrieved by the receipt of federal assistance respecting state-created obligations to needy pregnant women.
 
 
 24
 Nor can the supervisors, as federal taxpayers, claim standing to challenge the federal expenditure. In Massachusetts v. Mellon, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923), the Court stated that one challenging the validity of a statute "must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally."
 
 
 25
 Appellants protest that if they have no standing to question the federal regulation, that regulation is substantially immune from judicial scrutiny.[3] However, few citizens other than in their status as taxpayers, can ever claim to be aggrieved by governmental generosity. In Mease v. Heinz, 80 F.R.D. 119 (E.D.Penn.1978), the court discussed the question of a taxpayer's standing to protest the action of the government in giving away the Panama Canal. Finding no standing, it stated:
 
 
 26
 "The plaintiffs' objection that this rule leads to the result that certain actions simply cannot be challenged in federal court is well taken. However, Chief Justice Burger answered this argument in Schlesinger (V. Reservists to Stop the War, 418 U.S. 208, 227, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)) by observing that our system of government leaves many decisions to the political process."
 
 
 27
 Judgment affirmed.
 
 
 
 *
 Honorable William D. Murray, Senior United States District Judge of the District of Montana, sitting by designation
 
 
 [1]
 This is not the first time that Plumas County has locked horns with the state over welfare payments. In California Welfare Rights Organization v. Brian, 11 Cal.3d 237, 113 Cal.Rptr. 154, 520 P.2d 970, Cert. denied, 419 U.S. 1022, 95 S.Ct. 497, 42 L.Ed.2d 296 (1974), and Cooper v. Swoap, 11 Cal.3d 856, 115 Cal.Rptr. 1, 524 P.2d 97 (1974), the California Supreme Court held certain state welfare regulations invalid and incompatible with governing statutory provisions. This was followed by a class action brought by would-be welfare recipients, Cooper v. Obledo, in California superior court, seeking payment of benefits improperly withheld under the invalid regulation. In that case the superior court held that the plaintiffs were entitled to recover sums improperly withheld, and directed the state Department of Benefit Payments to notify all county welfare departments to that effect. The state department then ordered the counties to compute and pay the retroactive welfare grants. When Plumas County's Board of Supervisors was informed of the order the Board instructed the county welfare director not to make the payments and resolved "that Plumas County not comply with the court order, as this would be an unanticipated expense for which no county funds are available."
 On motion filed by the state department the court ordered the supervisors held in contempt, finding that there was "actual notice, wilful refusal to abide by the judgment and ability to comply." The court postponed sentencing for two weeks to allow for a change of heart. At sentencing, the supervisors adhered to their position and each was fined $500. The judgment was affirmed by the California Supreme Court in Ross v. Superior Court, 19 Cal.3d 899, 141 Cal.Rptr. 133, 569 P.2d 727 (1977).
 
 
 [2]
 Also named as parties defendant in appellants' third claim were eight individuals who were prevailing plaintiffs in Cooper v. Obledo ; See note 1. By this claim, appellants sought to enjoin state officials from continuing to prosecute civil contempt actions against them. The district court abstained from reaching this claim, noting that it was already the subject of state and federal actions. Final judgment has now been rendered in those actions affirming the contempt judgments. Ross v. Superior Court, supra note 1, Yee-Lit v. Richardson, Unpublished Memorandum No. 76-1455 (9th Cir. Aug. 28, 1978). Thus, this claim of appellants has already been adjudicated and is now precluded by res judicata
 
 
 [3]
 The question has received judicial attention, however. In Wisdom v. Norton, 507 F.2d 750, 756 (2d Cir. 1974), the court, anticipating Burns, held that the State of Connecticut could not be required to provide funds for pregnant women since an unborn child was not a dependent child under the Social Security Act. The court went further, however, and ruled that in issuing the regulation HEW exceeded its authority. In reserving this question the Supreme Court, in Burns, took note of this holding. 420 U.S. at 586, 95 S.Ct. 1180