[No. C000258. Third Dist. June 8, 1987.]

COMITE DE PADRES DE FAMILIA et al., Plaintiffs and Appellants, v.
BILL HONIG, as Superintendent, etc., et al., Defendants and Respondents.

COUNSEL

Susan E. Brown for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Elisabeth C. Brandt and Joseph O. Egan, Deputy Attorneys General, for Defendants and Respondents.

OPINION

**PUGLIA, J.**—Plaintiffs commenced an action against the State Department of Education (Department) and the State Board of Education (Board) for declaratory and injunctive relief. Plaintiffs seek a declaration that defendants have a statutory duty to monitor and enforce compliance with affirmative action employment programs in local school districts and seek a mandatory injunction compelling defendants to perform these duties. The trial court granted defendants' motion for summary judgment. Plaintiffs appeal from the ensuing judgment. We shall affirm.

In 1974 the Board adopted regulations requiring local public educational agencies to develop affirmative action plans by 1976. (Cal. Admin. Code, tit. 5, §§ 30-36, Cal. Admin. Register 74, No. 16.) The regulations were invalidated by the superior court, but the Legislature thereafter enacted them into law (Stats. 1977, ch. 1090, § 1, pp. 3498-3500), adding article 4 (Ed. Code, §§ 44100-44105) to chapter 1 of part 25 of the Education Code (hereafter article 4).

The purpose of article 4 is to promote equal employment opportunities. (Ed. Code, § 44100; all further references to sections of an undesignated code are to the Ed. Code.) Each local public educational agency is required to develop an affirmative action employment program with goals and timetables for its implementation and to submit an affirmation of compliance to the Department no later than January 1, 1979. (§ 44102.)[1] The Department is required through the development of guidelines and otherwise to provide assistance to local educational agencies in adopting, implementing and maintaining affirmative action programs and to report to the Legislature by July 1, 1979, concerning programs adopted and maintained by the local districts. (§ 44104.)[2] The Board is required to "... adopt all necessary rules and regulations to carry out the intent" of article 4. (§ 44105.) Responding to this directive, the Board has adopted regulations stating its policy to provide equal opportunity in employment for all persons and requiring each public educational agency to develop and implement an affirmative action program. (Cal. Admin. Code, tit. 5, §§ 30-31.)[3]

 ██ Plaintiffs argue article 4 requires defendants to monitor and enforce compliance with affirmative action programs by local school districts and that defendants have failed in these duties. Defendants contend article 4 clearly places the responsibility for developing and implementing affirmative action programs on the local districts and neither the Department nor the Board is required to monitor or enforce the local efforts; defendants argue the Board need only promulgate regulations necessary to carry out the intent of article 4 and that defendants have fulfilled their responsibilities under the law.

---

[1] Section 44102 reads in full: "Each local public education agency shall submit, not later than January 1, 1979, to the Department of Education an affirmation of compliance with the provisions of this article. The affirmative action employment program shall have goals and timetables for its implementation. The plan shall be a public record within the meaning of the California Public Records Act."

[2] Section 44104 reads in full: "The Department of Education, out of funds appropriated for such purposes, (1) shall provide assistance to local educational agencies in adopting and maintaining highquality affirmative action programs; (2) report to the Legislature, by July 1, 1979, regarding the number of districts which have adopted and are maintaining affirmative action programs, including the effectiveness of such programs in meeting the intent of this article; and (3) develop and disseminate to public education agencies guidelines to assist such agencies in developing and implementing affirmative action employment programs."

[3] California Administrative Code, title 5, sections 30 and 31 read in full: "30. Statement of Policy. It continues to be the policy of the State Board of Education to provide equal opportunity in employment for all persons and to promote the total realization of equal employment opportunity through a continuing affirmative action employment program. It is the intention of the Board to implement that policy and to implement Sections 44100 through 44105 of the Education Code as added by Chapter 1090 of the Statutes of 1977 (S.B. 179).

"31. Development and Implementation of Programs. Each public education agency will develop and implement an affirmative action employment program for all operating units and all levels of responsibility within its jurisdiction."

## I.

■ The fundamental principle of statutory interpretation is to ascertain the legislative intent in order to effectuate the purpose of the law. (*Honey Springs Homeowners Assn.* v. *Board of Supervisors* (1984) 157 Cal.App.3d 1122, 1136, fn. 11 [203 Cal.Rptr. 886]; *Wingfield* v. *Fielder* (1972) 29 Cal.App.3d 209, 218-219 [105 Cal.Rptr. 619].) In determining intent, we first look to the language used. If the words, given their ordinary and popular meaning, are reasonably free from uncertainty there is no need for construction, and we may not indulge in it. (*Ibid.*; *County of Orange* v. *Flournoy* (1974) 42 Cal.App.3d 908, 912 [117 Cal.Rptr. 224].)

■ The statutory language here is plain and unambiguous. In respect to the Department's responsibilities, the operative word is "assist." (§ 44104.) "Assist" does not share the coercive connotations of "monitor" and "enforce." Webster's Third New International Dictionary (1971) defines "assist" as to give aid or support (*id.*, at p. 132), whereas "monitor" means to keep track of, regulate, or control (*id.,* at p. 1460), and "enforce" means to compel (*id.,* at p. 751). The words deliberately chosen by the Legislature are not susceptible to the meaning ascribed to them by plaintiffs. To interpolate notions of regulation, compulsion and control into article 4 would entail a rewriting of the law under the guise of construction, a role we may not undertake. (See *Estate of Tkachuk* (1977) 73 Cal.App.3d 14, 18 [139 Cal.Rptr. 55].) There is no ambiguity in the language of section 44104 outlining the Department's responsibilities and interpretation is therefore unwarranted. (*County of Orange, supra,* 42 Cal.App.3d 908, 913.)

■ Plaintiffs encounter the same difficulty with respect to the Board's duties. Section 44105 states the Board is to "... adopt all necessary rules and regulations to carry out the intent" of article 4. As we have pointed out, the plain language of the statute does not contemplate monitoring and enforcement responsibilities for the department. Nor is the Board enjoined by the statute to do anything other than to adopt all necessary rules and regulations. ■ It is an axiom of administrative law that "... administrative regulations must conform to applicable legislative provisions, and that an administrative agency has no discretion to exceed the authority conferred upon it by statute. (*California Welfare Rights Organization* v. *Carleson* (1971) 4 Cal.3d 445, 455 [93 Cal.Rptr. 758, 482 P.2d 670]; *Morris* v. *Williams* (1967) 67 Cal.2d 733, 737 [63 Cal.Rptr. 689, 433 P.2d 697].)" (*California Welfare Rights Organization* v. *Brian* (1974) 11 Cal.3d 237, 242 [113 Cal.Rptr. 154, 520 P.2d 970].) Furthermore, to hold that the rules and regulations adopted by the Board must include provisions for monitoring and enforcement amounts to directing the Board how to perform its duties. That is beyond our province. ■ The powers and authority of the Board

are prescribed by the Legislature; absent a specific directive, the manner in which they are exercised is a matter of administrative discretion. (*Zetterberg* v. *State Dept. of Public Health* (1974) 43 Cal.App.3d 657, 662 [118 Cal.Rptr. 100].)

## II.

Notwithstanding its express language, plaintiffs urge article 4 implicitly imposes on defendants monitoring and enforcement duties.

Plaintiffs urge us to consider the guidelines and practices under the regulations of the Board in effect prior to the enactment of article 4. They contend these practices and procedures presage a legislative intention that defendants have enforcement authority. However, the argument proceeds from a flawed premise. The regulations upon which article 4 was based were invalid as exceeding the authority of the Board. (See Dept. of Fin., Analysis of Sen. Bill No. 179 (1977-1978 Reg. Sess.) as amended Sept. 6, 1977.) Accordingly, the practices and procedures thereunder of the Department and the Board were ultra vires. In any event, plaintiffs' reliance on practices and procedures prior to the enactment of article 4 cuts against their claim. The invalid 1974 regulations charged the Department with the development of guidelines in language identical to that now contained in subdivision (3) of section 44104 (see fn. 2, p. 531, *ante*; Cal. Admin. Code, tit. 5, § 35, Cal. Admin. Register 74, No. 16). Guidelines were adopted by the Department in 1975 which purported to confer an enforcement role on defendants. (Cal. Dept. Ed., Guidelines for Affirmative Action Employment Programs (1975) pp. 1, 13.) Knowledge of these guidelines can be imputed to the Legislature. Given the Legislature's presumed awareness of these guidelines, its failure expressly to grant enforcement authority in article 4 is further evidence it did not intend defendants to exercise that responsibility.

Plaintiffs purport to find authority for an implied duty in the fact that the Department and the Board have the ultimate responsibility in matters of education. (See Cal. Const., art. IX, inclusive; §§ 33031, 33111-33113.) However, pursuit of this analysis to the conclusion urged by plaintiffs would necessarily involve us in the forbidden function of legislating. The Legislature prescribes the authority to be exercised by defendants and the manner in which this authority is exercised is a matter of administrative discretion beyond our power to direct or control. (See *Zetterberg, supra,* 43 Cal.App.3d at p. 662.)

Plaintiffs' implied duty argument relies heavily on the case of *San Francisco NAACP* v. *San Francisco Unified Sch.* (N.D.Cal. 1979) 484 F.Supp. 657. In that case plaintiff sued the local school district and the state

Department, Superintendent and Board of Education to eliminate discriminatory practices in the San Francisco public schools. The state defendants moved to dismiss on the ground they were not proper parties. In denying the motion, the court took account of the state-defendants' statutory responsibilities, including those conferred by article 4 in respect to which the court stated, "These provisions seem to anticipate ongoing monitoring by the State Board, and although it is not given *express* enforcement powers, the intent of the legislation and the Board's inherent authority appear to provide it with the power and the duty to impose sanctions where necessary, 'to carry out the intent of [the] article.'" (*Id.,* at p. 663, original italics and brackets.)

The quoted language of the federal district court in *San Francisco NAACP* is of course not an authoritative interpretation of article 4 nor does it provide persuasive support for plaintiff's position. First, it was not essential to the court's decision and is therefore dictum. Second, the court's dictum was equivocal, gathered from what the provisions "*seem* to anticipate" and what the Board's inherent authority "*appear*[s] to provide." Third, the court did not hold an enforcement responsibility in fact exists, concluding that "[e]ven absent enforcement power, a failure by the Department of Education to perform its *express* duties could conceivably contribute to the wrongs of which plaintiffs complain." (*Ibid.*, italics added) Finally, the court's dictum flies in the face of the clear and unambiguous language of article 4 which plainly does not confer enforcement authority on the Department or the Board.

### III.

Plaintiffs assert title VI of the Civil Rights Act of 1964 provides support for their argument. (42 U.S.C. § 2000d.) This argument misperceives the nature of the dispute. The issue is not one of discrimination; rather, it is one of statutory responsibility. Plaintiffs have cited no federal law, nor do we know of any, purporting to regulate the allocation of affirmative action responsibility within the various levels of state agencies. The issue is one exclusively of state law and must be resolved against plaintiffs.

The judgment is affirmed.

Regan, J., and Carr, J., concurred.