TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 95-910 |
| of | : | |
| | : | April 12, 1996 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE CURT PRINGLE, SPEAKER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following questions:

1. May the State Superintendent of Public Instruction waive provisions of the Education Code for entire school districts, except those relating to earthquake safety?

2. May the State Superintendent of Public Instruction allocate funds to a school district for the operation of alternative schools on a basis (e.g., "active monthly enrollment" or "block grants" for special purpose education programs) for which no statutory authority exists?

3. May the State Superintendent of Public Instruction designate an entire school district as an "alternative school"?

4. What is the role of the State Board of Education in the waiver of Education Code provisions by the State Superintendent of Public Instruction for the operation of alternative schools?

CONCLUSIONS

1.      The State Superintendent of Public Instruction may not waive provisions of the Education Code for entire school districts.

2.      The State Superintendent of Public Instruction may not allocate funds to a school district for the operation of alternative schools on a basis (e.g., "active monthly enrollment" or "block grants" for special purpose education programs) for which no statutory authority exists.

3.      The State Superintendent of Public Instruction may not designate an entire school district as an "alternative school."

4.      The State Board of Education has no role in the waiver of Education Code provisions by the State Superintendent of Public Instruction for the operation of alternative schools.

ANALYSIS

The State Superintendent of Public Instruction ("Superintendent") is "elected by the qualified electors of the State at each gubernatorial election." (Cal. Const., art. IX, § 2.) The Superintendent is directed to "[s]uperintend the schools of this state" (Ed. Code, § 33112)[1] and "execute, under direction of the State Board of Education, the policies which have been decided upon by the board" (§ 33111). The Superintendent is ex-officio the director and executive officer of the State Department of Education. (§§ 33301-33303.)

We are presented herein with a number of questions relating to the authority of the Superintendent to waive provisions of the Education Code with respect to the operation of "alternative schools" by local school districts.

1.      Authority To Waive Statutory Requirements

The first question presented is whether the Superintendent has the authority to waive provisions of the Education Code for entire school districts, except those provisions relating to earthquake safety. For example, may the Superintendent waive provisions relating to (1) the definition of "average daily attendance" for purposes of computing school apportionments (§ 46000 et seq.), (2) the determination of revenue limit apportionment funding (§ 42238 et seq.), (3) the requirements to maintain specified minimum amounts of instructional time for the school day and year (§ 46206), or (4) the determination of apportionments for various special purpose ("categorical") education programs? We conclude that the Superintendent may not waive statutory requirements for entire school districts.

In 1975 (Stats. 1975, ch. 448) the Legislature authorized the establishment of alternative schools by local districts. The purposes of this statutory scheme (§§ 58500-58512) are set forth in section 58500 as follows:

---

[1]All section references are to the Education Code unless otherwise indicated.

"The governing board of any school district may establish and maintain one or more alternative schools within the district.

"For the purposes of this article, an alternative school is defined as a school or separate class group within a school which is operated in a manner designed to:

"(a) Maximize the opportunity for students to develop the positive values of self-reliance, initiative, kindness, spontaneity, resourcefulness, courage, creativity, responsibility, and joy.

"(b) Recognize that the best learning takes place when the student learns because of his desire to learn.

"(c) Maintain a learning situation maximizing student self-motivation and encouraging the student in his own time to follow his own interests. These interests may be conceived by him totally and independently or may result in whole or in part from a presentation by his teachers of choices of learning projects.

"(d) Maximize the opportunity for teachers, parents and students to cooperatively develop the learning process and its subject matter. This opportunity shall be a continuous, permanent process.

"(e) Maximize the opportunity for the students, teachers, and parents to continuously react to the changing world, including but not limited to the community in which the school is located."

Parents or guardians may request the governing board of their school district to establish an alternative school program. (§ 58502.) "Teachers employed and students enrolled in the alternative school shall be selected entirely from volunteers." (§ 58503.) Alternative schools may be established "in each attendance area or on a districtwide basis, with enrollment open to all students districtwide, or any combination thereof." (§ 58505.) These schools must be evaluated annually by the school district and a report sent to the Superintendent. (§ 58510.) The Superintendent is also authorized to establish further minimum standards and guidelines for the operation of alternative schools. (§ 58511.)

There is no general authority for the Superintendent to waive provisions of the Education Code for entire school districts. However, with respect to the operation of alternative schools by local districts, the Superintendent may waive provisions of the Education Code, except those relating to earthquake safety and those specifically relating to alternative schools. Section 58509, the focus of this opinion, provides:

"For the operation of alternative schools as herein defined, the Superintendent of Public Instruction may, upon application of a school district, waive any provisions of this code other than those relating to earthquake safety and the provisions of this chapter [sections 58500-58512]."

In applying the language of section 58509 to the issues raised herein, we are guided by well established principles of statutory construction. "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.]" (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826.) "To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning. [Citations.]" (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601.) When "`statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it.'" (*Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 73.) The plain meaning of words in a statute may be disregarded only when that meaning is "`repugnant to the general purview of the act,' or for some other compelling reason. . . ." (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 219.)

The term "waive" in this context may be defined as "to refrain from pressing or enforcing (as a claim or rule)." (Webster's Third New Internat. Dict. (1971) p. 2570.) The only statutory provisions that must be enforced by the Superintendent regarding the operation of alternative schools are earthquake safety requirements and the alternative school requirements of sections 58500-58512. All other provisions of the Education Code may be waived. We find no compelling reason for disregarding the plain meaning of the terms of section 58509.

Of course, the Superintendent's waiver authority may only be exercised "upon application of the school district" itself. Accordingly, which Education Code provisions are to be waived is a matter of initial determination by the local school board.

In any event, the Superintendent may not waive provisions of the Education Code for entire school districts. As we shall demonstrate in answer to the third question, school districts are not comprised solely of alternative schools.

2.     Allocation of Funds

The second question presented is whether the Superintendent may, in addition to waiving statutory provisions relating to the funding of alternative schools, allocate the funds on a different basis (e.g., "active monthly enrollment" or "block grants" for special purpose education programs) for which no statutory authority exists. We conclude that the Superintendent may not do so.

First, section 58509 prohibits the Superintendent's waiver of "the provisions of this chapter," one of which is section 58507. Section 58507 states: "[a]ny alternative school shall be maintained and funded by the school district at the same level of support as other educational programs for children of the same age level operated by the district." Hence, equal funding levels must be maintained by the school district, if the Superintendent waives a funding requirement requested by the school board.

More importantly, neither the Superintendent nor any other state officer may allocate state school funds on a basis for which no statutory authority exists. (See *Comite De Padres De Familia* v. *Honig* (1987) 192 Cal.App.3d 528, 532.) "[A]ny act of an officer to be valid must find express authority in law or be necessarily incidental to a power expressly granted. . . . [C]ourts . . .

cannot by construction confer upon any officer an authority which the Legislature has seen fit to withhold." (*Bear River Etc., Corp.* v. *County of Placer* (1953) 118 Cal.App.2d 684, 690.) Here, we believe that the Legislature has not authorized the Superintendent to allocate funds on a different basis or at different levels from that set forth in the Education Code. The Superintendent may act only in accordance with the Legislature's purposes in enacting sections 58500-58512, particularly those contained in section 58500. (See *Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal. 3d 801, 815-817 [discretion of administrative agency to make decisions in compliance with legislative standards].)

We conclude that the Superintendent may not allocate funds to a school district for the operation of alternative schools on a basis (e.g., "active monthly enrollment" or "block grants" for special purpose education programs) for which no statutory authority exists.

### 3. Entire School District As An Alternative School

The third question presented is whether the Superintendent may designate an entire school district as an alternative school. We conclude that the Superintendent may not do so.

Initially it is to be noted that only a local school board may establish an alternative school. (§§ 58500, 58501, 58502, 58505). While the Superintendent may waive certain provisions of the Education Code for the operation of such schools, "the provisions of [sections 58500-58512] may not be waived." (§ 58509.) Hence, the Superintendent has no authority to designate an alternative school, whether or not such a school or schools would take the place of all traditional schools in a district.

As for a local school board, "[a] district may establish alternative schools in each attendance area or on a districtwide basis, with enrollment open to all students districtwide, or any combination thereof." (§ 58505.) While section 58505 would seemingly allow every school of a district to be an alternative school, "[t]eachers employed and students enrolled in the alternative school shall be selected entirely from volunteers." (§ 58503.) As long as one student or one teacher does not volunteer for an alternative school, a local school board may not establish alternative schools to the exclusion of traditional schools for the entire school district.

In any event, the Superintendent has no authority to designate an entire school district as an alternative school.

### 4. Role of the State Board of Education

The final question asks what role the State Board of Education ("Board") has in the Superintendent's granting of statutory waivers for the operation of alternative schools. We conclude that the Board has no role in the Superintendent's granting of such waivers.

Although as a general proposition the Superintendent acts as the executive officer of the Board in carrying out its policies (§ 33301), the provisions of sections 58500-58512 do not grant the Board a role in the Superintendent's decisions regarding statutory waivers. The plain wording of

section 58509 is that upon application of a school district, "the Superintendent of Public Instruction may . . . waive any provisions of" the Education Code other than earthquake safety requirements and the requirements of sections 58500-58512.

To conclude that the Board has a role in the Superintendent's decision would be contrary to the unambiguous wording of section 58509 and would require the insertion of words in the statute not contained therein. "[A] statute `. . . is to be interpreted by the language in which it is written, and the courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions.' [Citation.]" (*Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1097; cf. *Salazar* v. *Eastin* (1995) 9 Cal.4th 836, 856-860 [State Board of Education may not adopt regulations defining "indigence" for home-to-school transportation since the Legislature specifically gave such authority to local school districts].)

Accordingly, we conclude that the Board has no role in the waiver of Education Code provisions by the Superintendent for the operation of alternative schools.

\* \* \* \* \*