[Civ. No. 14182. Third Dist. June 26, 1974.]

O'DELL WEBB et al., Plaintiffs and Respondents, v.
DAVID B. SWOAP, as Director, etc., Defendant and Appellant.

[Civ. No. 14333. Third Dist. June 26, 1974.]

DAVID B. SWOAP, as Director, etc., Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
O'DELL WEBB et al., Real Parties in Interest.

**COUNSEL**

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, N. Eugene Hill, Byron B. Chell, Edmund E. White and John Fourt, Deputy Attorneys General, for Defendant and Appellant and for Petitioner.

Howard K. Watkins, Jay-Allen Eisen, Ralph Santiago Abascal, Burton Danziger and John Gant for Plaintiffs and Respondents and for Real Parties in Interest.

No appearance for Respondent.

## Opinion

**FRIEDMAN, J.**—The plaintiffs in this action are recipients of public assistance programs administered by the state Department of Benefit Payments and the California counties.[1] Plaintiffs charge invalidity of state regulations which classify grants paid to recipients pending unsuccessful administrative appeals as overpayments and which require the counties to take prescribed action to collect these overpayments. The superior court sustained the plaintiff's position and entered a judgment enjoining the director of the state department from recovering these grants. The director appeals.

The problem arises when information collected at the county welfare offices causes an initial determination to terminate or reduce existing grants of aid. In *Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011], and *Wheeler* v. *Montgomery* (1970) 397 U.S. 280 [25 L.Ed.2d 307, 90 S.Ct. 1026], the federal Supreme Court held that public assistance recipients have a due process right to a pre-termination evidentiary hearing before the actual cessation or reduction of aid. As a result of these decisions, recipients are constitutionally entitled to notice of proposed termination or reduction and, if they request, to an evidentiary hearing and an administrative decision before payments are terminated or reduced. If the adminstrative appeal confirms the initial determination, there arises the question of substantive entitlement to the payments made pending the appeal. May the state view these expenditures as an overpayment and offset them against later grants? Plaintiffs contend that recovery of overpayments is lawful only if the recipient has been guilty of fraud (e.g., willful nondisclosure or misrepresentation of eligibility factors).

The parties cite as typical the instance of plaintiff Webb. Webb was a physically incapacitated parent receiving a monthly AFDC grant. The county decided that he had regained his physical capacity for full-time

---

[1]The complaint, filed in October 1972, named the Director of the State Department of Social Welfare as defendant. The department has since been renamed Department of Benefit Payments (Welf. & Inst. Code, § 10550).

When this lawsuit was filed, public assistance (as distinguished from general assistance) included the various categorical aid programs administered under the Social Security Act and state law, primarily Old Age Assistance, Aid to the Blind, Aid to the Permanently and Totally Disabled, and Aid to Families with Dependent Children (AFDC). See *Ogdon* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 192, 199, fn. 3 [113 Cal.Rptr. 206, 520 P.2d 1022]. On January 1, 1974, the federal Department of Health, Education and Welfare assumed direct administration of the first three programs, leaving the AFDC system under joint federal-state-county operation. See *California League of Senior Citizens, Inc.* v. *Brian* (1973) 35 Cal.App.3d 443 [110 Cal.Rptr. 809].

employment and notified him of his ineligibility for continued aid. In August 1971 Webb filed a timely appeal; hearings were held before a referee in November 1971, and in February 1972 the Director of Social Welfare filed a decision confirming his ineligibility. The administrative appeal occupied between five and six months, during which Webb continued to draw his monthly grant. The county notified Webb that he had received an overpayment of $1,986 during the period. Webb filed a second appeal, which resulted in a decision confirming the existence of an overpayment but holding him liable only for $150, which was the value of his liquid assets.

In California the administrative appeals are heard by referees employed by the State Department of Benefit Payments; these referees prepare proposed decisions for submission to the departmental director, who may adopt a proposed decision or decide the matter himself on the basis of the hearing record. (Welf. & Inst. Code, §§ 10953-10961.) Effective November 1, 1971, the state director adopted the regulations under attack. These regulations classify as "overpayments" any assistance paid pending decision of the administrative appeal; require the counties to recover overpayments by decreasing future grants of assistance, the recovery being limited to the value of the recipients' resources or income; offer recipients an opportunity to take an administrative appeal from the overpayment determination. Claimants who instituted administrative appeals were informed that denial of their claims might result in an overpayment.

When these state regulations were adopted in 1971, the federal Department of Health, Education and Welfare had no regulations dealing with overpayment. (*Ogdon* v. *Workmen's Comp. Appeals Bd., supra,* 11 Cal.3d at p. 199.) On August 15, 1973, pending this appeal, the federal department published a revised regulation governing hearings on recipients' protests against termination or reduction of aid; calling for timely (at least 10 days') notice of prepared termination or reduction; directing continuation of aid if the recipient requested a hearing within the notice period; requiring completion of the decisional process within 90 days of the claimant's hearing request; calling for federal financial participation for assistance paid during the administrative appeal; declaring that assistance paid pending the administrative appeal "is subject to recovery by the [state] agency if its action is sustained."[2]

---

[2]Code of Federal Regulations, chapter 2, title 45, section 205.10, as amended (38 Fed. Reg. No. 157 (Aug. 15, 1973)).

In the nomenclature of the Department of Health, Education and Welfare and of the state and local welfare agencies, the process of administrative appeal, hearing

■ As we interpret *Goldberg* v. *Kelly,* the guaranty of procedural due process intervenes to prevent a "grievous loss" without a prior opportunity for contest. (397 U.S. at pp. 262-263 [25 L.Ed.2d at pp. 295-296].) Constitutional concern centers on the threatened interruption of basic livelihood pending the contest, not ultimate disentitlement after the contest. Pending the administrative appeal, due process calls for continued livelihood, not continued eligibility. The recipient's constitutional right to a pre-termination appeal does not empower him to extend eligibility for continued aid by filing a meritless appeal. When the appeal is finished, he has received all the due process he may constitutionally claim. Thus his retention of aid received pending the appeal is not hinged to constitutional principle; rather, it turns upon federal and state statutes and regulations.

The recoupment of public benefits paid out pending completion of the administrative process is the subject of two recent decisions of the California Supreme Court. In *Ogdon* v. *Workmen's Comp. Appeals Bd., supra,* 11 Cal.3d 192, filed April 15, 1974, the court held that in the absence of a statute establishing repayment liability, AFDC benefits paid to a qualified recipient could not be recouped out of subsequent workmen's compensation payments. In *Gilles* v. *Department of Human Resources Development,* 11 Cal.3d 313 [113 Cal.Rptr. 374, 521 P.2d 110], filed April 23, 1974, the court held that administrative warnings to applicants of future liability to repay unemployment insurance overpayments did not obviate the necessity of a case-by-case inquiry demanded by a statute which restricted recovery to instances permitted by "equity and good conscience."

■ Both these decisions are consistent with a longstanding California doctrine, which holds recipients free of liability for repayment of grants legitimately obtained in the absence of a statute imposing liability. (*Ogdon* v. *Workmen's Comp. Appeals Bd., supra,* 11 Cal.3d at pp. 199-200 [106 P.2d 11, 130 A.L.R. 1141]; *County of Alameda* v. *Janssen* (1940) 16 Cal.2d 276, 283-284; 23 Ops.Cal.Atty.Gen. 29 (1954).) Here there is no question but that the grants were lawful when paid, for—under the *Goldberg* v. *Kelly* doctrine—termination or reduction was not permissible until waiver or fulfillment of the right to an administrative appeal.

No federal statute deals with the state's authority to recover money

and determination received the general appellation "fair hearing." See *King* v. *Martin* (1971) 21 Cal.App.3d 791 [98 Cal.Rptr. 711]. In its August 1973 revision of its regulations, the federal agency eliminated the commendatory adjective. We shall refer to the process generally as "administrative appeal" or "administrative process."

properly paid to public assistance recipients. (*Ogdon* v. *Workmen's Comp. Appeals Bd., supra,* 11 Cal.3d at p. 199.) As we have observed, the regulations of the Department of Health, Education and Welfare were silent on this topic until the amendments of August 15, 1973, which now recite that assistance paid pending the administrative process "is subject to recovery by the [state] agency if its action is sustained." The federal department accompanied this regulation with a recital of the arguments for and against collection of these sums.[3]

At this point, the parties engage in conflicting claims over validity of the state regulations directing recoupment of grants paid pending administrative appeal by means of deductions from later grants. Plaintiffs charge that these regulations exceed the director's statutory powers. The director, on the contrary, claims statutory authority for them.

■ The director is authorized to adopt regulations affecting the purposes and responsibilities of the department "which are consistent with law and necessary for the administration of aid." (Welf. & Inst. Code, § 10553, subd. (d).) Such regulations come before the court with a presumption of validity; they are invalid only if they would alter or amend the statutes or enlarge or restrict the agency's statutory power. (*California Welfare Rights Organization* v. *Carleson* (1971) 4 Cal.3d 445, 455 [93 Cal.Rptr. 758, 482 P.2d 670]; *Morris* v. *Williams* (1967) 67 Cal.2d 733, 748-749 [63 Cal.Rptr. 689, 433 P.2d 697].)

■ As noted earlier, a public assistance recipient has no substantive liability to repay the state or county for aid legitimately obtained unless a statute imposes liability. In section 11004 the Welfare and Institutions Code provides for recovery of certain kinds of overpayments made through administrative error or through the recipient's fraud or failure to disclose. (*Ogdon* v. *Workmen's Comp. Appeals Bd., supra,* 11 Cal.3d at p. 200.) Other provisions of the Welfare and Institutions Code provide for

---

[3]"Legal aid groups argue that not to continue eligibility until a decision is rendered after a hearing, and advising recipients that assistance paid pending a decision is subject to recoupment, discourages claimants requesting hearings.

"Present practices in some States include notifying the recipient on the notice that any aid paid pending the decision may be subject to recoupment. Experience fails to indicate that such practice causes any reluctance on the part of a recipient who desires a hearing because he believes the agency made an error. To provide otherwise invites abuse of the hearing process by those utilizing it as a method of continuing aid for which they are not eligible.

"State and local welfare agencies favored the provision as discouraging requests for hearings made without belief that the action is erroneous but solely to secure temporary continuation of assistance. Accordingly, the provision is retained." (38 Fed. Reg. 22006, No. 157 (Aug. 15, 1973).)

recovery of unauthorized grants under special circumstances. (*Id.* at pp. 200-202.) None of these statutes makes the recipient substantively liable for the repayment of grants lawfully paid pending an unsuccessful appeal; none authorizes any procedure for recovery.

The director postulates three other statutes as authority for the regulations in question: first, section 10553, subdivision (d), which authorizes him to adopt regulations affecting the purposes of the department "and which are consistent with law and necessary for the administration of aid;" second, section 10554, which empowers him to adopt regulations "to implement, interpret, or make specific the law enforced by the department;" third, section 10600, which designates the department as the state agency "with full power" to administer federal-state social service "in order to secure full compliance with the applicable provisions of state and federal laws."

None of these sections authorizes the regulations in question. These regulations cannot be bottomed upon conformity to federal law, because the federal regulation on recoupment of grants paid pending appeal is permissive, not mandatory. They cannot be ascribed to the director's power to interpret or implement the statutes administered by his department, for none of these statutes imposes any substantive liability for restoration of aid paid pending appeal. In section 11004 the Legislature has made recipients liable for repayment of benefits received under some circumstances, but not under these circumstances. The regulations in question would obtain payment for a nonexistent liability. Absent a statute authorizing recoupment of aid paid pending appeal, a departmental regulation calling for that recoupment exceeds the director's statutory powers. The regulations in question are to that extent invalid.

Finally, we reject the director's contention that the recipients' retention of grants received during periods of ineligibility would constitute an unconstitutional gift of public money. Article XIII, section 25 (formerly art. IV, § 31) of the California Constitution prohibits the Legislature from making or authorizing a gift of public money. Payments made for a "public purpose" are not a gift; the indigent aid programs are themselves constitutionally valid. (*County of Los Angeles* v. *La Fuente* (1942) 20 Cal.2d 870, 876-878 [129 P.2d 378]; *County of Alameda* v. *Janssen, supra,* 16 Cal.2d at pp. 281-282.) When the state pays assistance during the period covered by the recipients' appeal, the state does so for a public purpose: compliance with the due process demands of the Fourteenth Amendment to the federal Constitution. If the appeal thus turns out unfavorably, the recipient has no liability to repay for, as we noted *ante,* no substantive liability arises for repayment of aid legitimately obtained unless a statute

establishes it. The Legislature might in the future enact such a statute within the restrictions emanating from the Social Security Act. (See 42 U.S.C. § 602, subd. (a)(7); *National Welfare Rights Organization* v. *Weinberger* (D.D.C. April 1974) No. 1703-73.) We do not understand the director to suggest that the gift prohibition of the California Constitution mandates such a statute or serves *ex proprio vigore* as a substitute for it.

 Since the Director of Benefit Payments has no authority to recoup these overpayments, the injunctive relief ordered by the trial court was proper. The Attorney General correctly points out that immunity from repayment permits a recipient to extend his time on the assistance rolls through the expedient of filing a meritless appeal. There are two answers— a statutory approach to the problem by the Legislature or administrative and budgetary arrangements which minimize the time consumed by the appeal process.

Pending the present appeal, the Director of Benefit Payments filed in this court a petition for a writ of mandate directing the superior court to modify its injunction in the light of the revised federal regulations published August 15, 1973. (See text accompanying fn. 2, *supra*.) We issued an order to show cause and ordered consolidation of the mandate proceeding and the appeal. On the appeal we affirm the judgment granting injunctive relief, making the petition for mandate moot and ripe for dismissal.

The judgment of the superior court is affirmed. The petition for writ of mandate (3 Civil 14333) is dismissed.

Richardson, P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 21, 1974.