[No. B101267. Second Dist., Div. Three. Oct. 29, 1997.]

MUSTARI AKTAR et al., Plaintiffs and Respondents, v.
ELOISE ANDERSON, as Director, etc., Defendant and Appellant.

[No. B106453. Second Dist., Div. Three. Oct. 29, 1997.]

ELOISE ANDERSON, as Director, etc., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MUSTARI AKTAR et al., Real Parties in Interest.

1168

COUNSEL

Daniel E. Lungren, Attorney General, Charlton G. Holland III, Assistant Attorney General, John H. Sanders and Sandra L. Goldsmith, Deputy Attorneys General, for Defendant and Appellant and for Petitioners.

No appearance for Respondent.

Kirk McInnis for Plaintiffs and Respondents and for Real Parties in Interest.

OPINION

KLEIN, P. J.—Defendant and appellant Eloise Anderson, Director of the California Department of Social Services, and the California Department of Social Services (hereafter, the Department), appeal an order granting a preliminary injunction in favor of plaintiffs and respondents Mustari Aktar, Ingrid Monakil, Henrietta Russell, and all persons similarly situated (hereafter, Aktar). The Department also filed a petition for writ of mandate requesting this court to dissolve the preliminary injunction. The two matters have been consolidated.

The trial court enjoined the Department from *involuntarily* collecting food stamp overissuances stemming from administrative error. A subsequent amendment to the federal food stamp law requires the states to pursue such overissuances by involuntary means, if necessary. The essential issue presented is whether *existing state law* requires the Department to comply with the amended federal law, or whether a new law must be enacted by the Legislature to compel compliance.

We conclude Welfare and Institutions Code section 10600 directs the Department to comply fully with federal law in administering its social service programs. Further, Welfare and Institutions Code section 18903 specifically mandates the Department to fulfill its food stamp agreement with the federal government. That agreement requires the Department to administer the program in conformity with federal law, including any changes in federal law and regulations. Consequently, the Department is mandated by existing state law to comply with the amended federal food stamp law. Therefore, the Department cannot be enjoined from pursuing collection by involuntary means of overissuances which occurred *after* the effective date of the amendment to the federal law.

As to administrative error overissuances which occurred prior to the new enactment, the new law does not apply.

The order granting the preliminary injunction shall be modified accordingly to permit the involuntary collection of administrative error overissuances which occurred subsequent to the enactment of the new law.

## Factual and Procedural Background

In 1994, the Department issued a regulation, Manual of Policy and Procedure section 63-801.443(b), authorizing the collection of food stamp overissuances resulting from administrative error.

On September 22, 1995, Aktar filed a first amended petition for writ of mandate and a class action complaint for declaratory and injunctive relief against the Department, seeking to prevent the Department from using any nonvoluntary means to collect from recipients overissuances of food stamps resulting from administrative error.[1]

On January 12, 1996, Aktar brought a motion for a preliminary injunction to prohibit the Department from collecting food stamp administrative error overissuances by any means other than voluntary repayments and to prohibit the Department from instructing the Franchise Tax Board (FTB) to offset state income tax refunds to satisfy such claims. Aktar argued the Department could collect overissuances of food stamps due to administrative error through involuntary means only if there existed specific state statutory authority for such collection or if federal law required it. Aktar contended the Department lacked such authority because no state statute authorized the involuntary collection of administrative error food stamp overissuances and that federal law did not require such collection.

Aktar also argued that leaving aside whether the Department were authorized to use involuntary means to collect administrative error food stamp overissuances, the Department could not use the state tax intercept program under Government Code section 12419.5 to recoup such overissuances because the Department was not collecting an "amount due a state agency," but rather it was collecting monies on behalf of the federal government, and because the Department had failed to establish an "amount due."

The Department argued Aktar's position was erroneous because: The Department was not barred from using involuntary means of recouping food stamp overissuances caused by administrative error; state law authorizes

---

[1] The federal food stamp regulations recognize three types of errors: intentional program violations, as where a recipient fraudulently receives benefits; inadvertent household errors, as where a recipient makes an honest mistake that leads to an overissuance of benefits; and administrative errors, where the recipient is without fault. (7 C.F.R. § 273.18(a) (1997).) This matter concerns only administrative error overissuances.

collection of such food stamp overissuances; federal law also requires the states to collect such food stamp overissuances; and administrative error food stamp overissuances are subject to recoupment pursuant to the state tax intercept program.

On February 27, 1996, the trial court granted the motion for preliminary injunction. The trial court found "neither state nor federal law requires coercive collection of food stamp overpayments" and concluded "the state is not entitled to do this. They have within their means . . . they can simply pass a law and this dispute will dissolve."

The order granting the preliminary injunction provides: "The respondents and each of them, their officers, agents, employees and representatives are enjoined and restrained from: [¶] 1. Collecting Food Stamp administrative error overpayments by any means other than voluntary repayments. [¶] 2. Utilizing the [FTB] to intercept state income tax refunds to satisfy claims for overpayments of Food Stamps caused by administrative errors."

On March 12, 1996, the Department filed notice of appeal from the order granting the preliminary injunction.[2]

On August 22, 1996, Congress enacted Public Law No. 104-193, 110 Statutes at Large 2332, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), thereby amending the federal Food Stamp Act of 1977 (7 U.S.C. § 2022). (Pub.L. No. 104-193 (Aug. 22, 1996) 1996 U.S. Code Cong. & Admin. News, No. 2, § 844 (hereinafter, section 844).) Section 844 directs the states to collect any overissuance of coupons by reducing the allotment of a household, withholding amounts from unemployment compensation, recovering moneys from federal pay or a federal income tax refund, or by any other means. (7 U.S.C.A. § 2022(b)(1).)

On August 27, 1996, the Department was notified by the United States Department of Agriculture (USDA) that the states were required to implement section 844 upon enactment of PRWORA, and in any case where the state has failed to apply these new collection provisions on September 22, 1996, that case will be treated as an "error" and fiscal quality control sanctions would follow.[3]

On October 11, 1996, during the pendency of the appeal, the Department filed a petition for writ of mandate in this court seeking to dissolve the

---

[2]The order granting the preliminary injunction is appealable. (Code Civ. Proc., § 904.1, subd. (a)(6); *Socialist Workers etc. Committee* v. *Brown* (1975) 53 Cal.App.3d 879, 885, fn. 5 [125 Cal.Rptr. 915]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 130, pp. 194-195.)

[3]Congress has given the USDA various enforcement powers. When the USDA determines a state has been negligent in making food stamp eligibility determinations, it may: require the state to repay the value of resulting food stamp overissuances (see 7 U.S.C.A. § 2020(h));

preliminary injunction issued by the superior court in light of the new federal law.

Due to the statewide importance of the issues presented, this court issued an order to show cause as to why the relief requested in the petition should or should not be granted, ordered the petition to be heard concurrently with the appeal, and ordered the appeal expedited.

## CONTENTIONS

The Department contends: In reviewing the order granting the preliminary injunction, this court must apply the law in effect at the time the appeal is heard; the supremacy clause, the state plan pursuant to which the state participates in the federal food stamp program, and state law, all require the state to comply with section 844 of PRWORA immediately, and therefore the order enjoining compliance therewith must be reversed; the requested relief is necessary so that the Department can comply with the new federal mandates regarding collection of food stamp overissuances contained in PRWORA, avoid unnecessary sanctions and not jeopardize accessibility to the federal food stamp program for the many low-income Californians who rely on food stamps to meet their nutrition needs; and there is no lawful basis for separately enjoining the Department from utilizing the FTB to intercept state income tax refunds to satisfy claims for overpayments of food stamps caused by administrative error.

## DISCUSSION

1. *Overview of the food stamp program.*

 a. *Background.*

The federal food stamp program was enacted in 1964 to "alleviate such hunger and malnutrition" among America's poor. (7 U.S.C.A. § 2011.) Under the program, eligible households receive food stamp coupons that can be redeemed for food items at participating retail stores. (7 U.S.C.A. § 2013(a).) The program is administered nationally by the Secretary of the USDA, who is responsible for issuing regulations consistent with the Food Stamp Act. (7 U.S.C.A. § 2013(a), (c).)

---

impose monetary penalties against a state with a high "payment error rate" (7 U.S.C.A. § 2025(c), (d); see also 7 C.F.R. § 275.23 (1997)); withhold federal financial assistance from a state's food stamp program if the state fails "without good cause to comply with any of the" statutory or regulatory provisions governing the federal food stamp program (7 U.S.C.A. § 2020(g)); or reduce federal payments "to collect unpaid claims assessed against the State agency." (7 U.S.C.A. § 2022(a)(1); see also 7 U.S.C.A. § 2023(a); 7 C.F.R. § 276.4.)

States that participate in the food stamp program designate a state agency that is responsible for administering the program at the state level. (7 U.S.C.A. § 2012(n).) The state agency must administer the program in compliance with the act and its implementing regulations. (7 U.S.C.A. § 2020(e)(5)-(6).) While the federal government bears responsibility for the cost of food stamp benefits (7 U.S.C.A. § 2013(a)), the states share with the federal government the costs of administering the program. (7 U.S.C.A. § 2025.)

b. *California's participation and its agreement with the USDA.*

If a state elects to participate in the federal food stamp program, it must develop a state plan of operation which conforms to federal law. (7 U.S.C.A. § 2020(d); 7 C.F.R. § 272.2 (1997).) One of the components of the state plan is the federal/state agreement, which is the legal agreement between the state and the USDA. (7 C.F.R. § 272.2(a)(2).) "This Agreement is the means by which the State elects to operate the Food Stamp Program and to administer the program in accordance with the Food Stamp Act of 1977, as amended, regulations issued pursuant to the Act and the FCS [Food and Consumer Service]-approved State Plan of Operation." (7 C.F.R. § 272.2(a)(2).) As part of the standard agreement, the state agrees "to fully comply with any changes in Federal law and regulations." (7 C.F.R. § 272.2(b).)

California has elected to participate in the federal food stamp program (Welf. & Inst. Code, § 18900 et seq.) and has designated the Department as the state agency to implement the program. (Welf. & Inst. Code, §§ 10600, 10600.1, 18902, 18903.)

In accordance with federal law, California has entered into a federal/state agreement with the USDA for operation of the food stamp program in California. In the agreement, California expressly has agreed to comply with the federal food stamp law and with any amendments thereto.[4] The agreement provides in relevant part: "The State of California and Food and Nutrition Service (FNS), United States Department of Agriculture (USDA), hereby agree to act in accordance with the provisions of the Food Stamp Act of 1977, as amended, implementing regulations, the FNS-approved State Plan of Operation and FNS-approved manuals. *The State and FNS (USDA) further agree to fully comply with any changes in Federal law and regulations.*" (Italics added.)

c. *Section 844.*

The statutory provision in issue, section 844 of PRWORA, enacted on August 22, 1996, directs the states to use *involuntary* means to collect any

---

[4]The record contains a copy of California's food stamp agreement with the USDA, executed in 1981.

food stamp overissuances, including overissuances due to administrative error. Section 844 provides in relevant part: "(a) COLLECTION OF OVERISSUANCES.—Section 13 of the Food Stamp Act of 1977 (7 U.S.C. 2022) is amended— [¶] (1) by striking subsection (b) and inserting the following: [¶] '(b) COLLECTION OF OVERISSUANCES.— [¶] (1) IN GENERAL.—Except as otherwise provided in this subsection, a State agency *shall* collect any overissuance of coupons issued to a household by— [¶] (A) reducing the allotment of the household; [¶] (B) withholding amounts from unemployment compensation from a member of the household under subsection (c); [¶] (C) recovering from Federal pay or a Federal income tax refund under subsection (d); or [¶] (D) any other means. [¶] (2) COST EFFECTIVENESS.— Paragraph (1) shall not apply if the State agency demonstrates to the satisfaction of the Secretary that all of the means referred to in paragraph (1) are not cost effective. [¶] (3) MAXIMUM REDUCTION ABSENT FRAUD.—If a household received an overissuance of coupons without any member of the household being found ineligible to participate in the program under section 6(b)(1) and a State agency elects to reduce the allotment of the household under paragraph (1)(A), the State agency shall not reduce the monthly allotment of the household under paragraph (1)(A) by an amount in excess of the greater of— [¶] (A) 10 percent of the monthly allotment of the household; or [¶] (B) $10. [¶] (4) PROCEDURES.—A State agency shall collect an overissuance of coupons issued to a household under paragraph (1) in accordance with the requirements established by the State agency for providing notice, electing a means of payment, and establishing a time schedule for payment.' " (7 U.S.C.A. § 2022(b), italics added.)

*2. The Department is mandated by existing state law to comply with section 844 of PRWORA.*

■ The essential issue presented is whether section 844 of PRWORA is enforceable by the Department, or whether, as Aktar argues, the Department requires *additional* statutory authorization from the California Legislature to pursue collection of the subject overissuances.

*a. Section 844 is properly addressed by this court at this juncture, even though it was enacted during the pendency of the appeal.*

As a preliminary matter, in reviewing the order granting the preliminary injunction, we are required to consider the impact of section 844, even though said statute was not in effect at the time this matter was ruled on below.

■ In *Building Industry Assn.* v. *City of Oxnard* (1985) 40 Cal.3d 1, 3 [218 Cal.Rptr. 672, 706 P.2d 285], while the appeal was pending, the city

amended the challenged ordinance. Although the appellant contended the modification of the ordinance had no bearing on the appeal, the Supreme Court ruled ". . . past California decisions establish that in proceedings of this nature—where injunctive relief against a legislative enactment is sought—the relevant provision for purposes of the appeal *is the measure which is in effect at the time the appeal is decided.* [Citations.]" (*Ibid.*, italics added.)

Similarly, *Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 654, footnote 3 [209 Cal.Rptr. 682, 693 P.2d 261], observed ". . . on appeal from judgments granting or denying an injunction, the court applies the law that is current at the time of the decision."

Accordingly, we examine whether the preliminary injunction is sustainable in light of the subsequent enactment of section 844.

b. *The Department is mandated by state law to comply with federal law in administering the food stamp program.*

█ The issue of whether the Department has legislative authorization to pursue collection of overissuances under section 844 is relevant because the Department, as a state agency, has only those powers conferred upon it by law and may not validly act in excess of such powers. (See, e.g., *Ferdig* v. *State Personnel Bd.* (1969) 71 Cal.2d 96, 103-104 [77 Cal.Rptr. 224, 453 P.2d 728]; *Association for Retarded Citizens* v. *Department of Developmental Services* (1985) 38 Cal.3d 384, 391-392 [211 Cal.Rptr. 758, 696 P.2d 150]; *B. C. Cotton, Inc.* v. *Voss* (1995) 33 Cal.App.4th 929, 955-956 [39 Cal.Rptr.2d 484]; *United Farm Workers of America* v. *Agricultural Labor Relations Bd.* (1995) 41 Cal.App.4th 303, 319 [48 Cal.Rptr.2d 696], review den.)

█ Examination of the statutory scheme compels the conclusion the Department is authorized by existing state law to comply with federal law, including any amendments thereto, in administering the food stamp program in California.

Welfare and Institutions Code section 10600 designates the Department as "the single state agency with full power to supervise every phase of the administration of public social services, except health care services and medical assistance, for which grants-in-aid are received from the United States government or made by the state *in order to secure full compliance with the applicable provisions of state and federal laws.*" (Italics added.) Thus, the Legislature has directed the Department to comply fully with federal law in administering its programs.

Welfare and Institutions Code section 18903, within the chapter pertaining to food stamps, directs the Department to "enter into *and execute* on behalf of the state all necessary agreements in connection with this chapter as may be required by the United States government." (Italics added.)[5] Thus, the Department specifically is mandated to carry out its food stamp agreement with the USDA.

In said agreement, "The State of California . . . agree[s] to act in accordance with the provisions of the Food Stamp Act of 1977, as amended, implementing regulations, the FNS-approved State Plan of Operations and FNS-approved manuals. *The State and FNS (USDA) further agree to fully comply with any changes in Federal law and regulations.*" (Italics added.) Thus, the state/federal agreement binds the Department to comply not only with extant federal law but also with any future changes in the federal food stamp law.

Consequently, once Congress enacted section 844 directing the states to collect any overissuances of food stamps, the Department was required by state law to comply therewith.

c. *No merit to Aktar's theory the Department cannot implement section 844 of PRWORA until it receives legislative authorization.*

Aktar argues that Congress, in creating the food stamp program, has elected to give states fiscal incentives to comply with its mandates. Whether or not a state chooses to be swayed by a fiscal incentive, seek a waiver of a particular requirement or accept a lower payment rate, is a legislative choice. The Legislature is presented with numerous complex choices about revision, compliance, and even continued participation. It may be the Legislature will act to expand the Department's powers to include the powers now being sought by the Department. It may be the Legislature will elect to seek a waiver under 7 United States Code section 2026. Yet until the Legislature acts, the Department is constrained in its legal authority.

Aktar's argument is without merit. As explained above, existing state law already mandates the Department to comply with the amended federal food

---

[5]Because the statute directs the Department both to "enter into" and to "execute" its food stamp agreement with the federal government, to avoid rendering the word "execute" surplusage (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323]) we construe it to mean "carry out [the agreement] according to its terms," not merely "to sign." (Black's Law Dict. (5th ed. 1979) p. 509, col. 2.)

stamp law. Therefore, the Department does not require any additional authorization from the Legislature to comply with section 844.

 d. *No merit to Aktar's contention this case is controlled by the doctrine a recipient of public assistance is not required to repay erroneously paid benefits absent additional specific legislation.*

Aktar also seeks to uphold the preliminary injunction on the ground case law precludes liability for repayment of the overissuances, absent specific legislation requiring such repayment. However, the cited authorities do not support Aktar's position.

In *Ogdon* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 192, 199-200 [113 Cal.Rptr. 206, 520 P.2d 1022], our Supreme Court stated: "At common law in the absence of fraud in procuring relief a recipient of charity was under no obligation to repay the government agency disbursing such charity. [Citations.] [¶] In the absence of statute therefore no liability rests upon the recipient of *public assistance* in this state to reimburse the state or county for aid legitimately obtained and granted. [Fn. omitted.]" Similarly, *Webb* v. *Swoap* (1974) 40 Cal.App.3d 191, 196 [114 Cal.Rptr. 897], held ". . . a public assistance recipient has no substantive liability to repay the state or county for aid legitimately obtained unless a statute imposes liability." (Accord, *Oliva* v. *Swoap* (1976) 59 Cal.App.3d 130, 136 [130 Cal.Rptr. 411].)

In the instant case, a statute, specifically, section 844 of PRWORA, *does* mandate recoupment of overissuances, and California law directs the Department to comply therewith. Accordingly, Aktar's reliance on the above authorities is misplaced.

In particular, *Webb* v. *Swoap*, *supra*, 40 Cal.App.3d 191, which Aktar describes as "eerily parallel" to the instant case, is unavailing. That decision held, inter alia, that although Welfare and Institutions Code section 10600 requires the state to comply with federal law, the state could not recoup overpayments of certain benefits because ". . . the federal regulation on recoupment of grants paid pending appeal is *permissive*, not mandatory." (*Id.*, at p. 197, italics added.) However, in the instant case, we are presented with a federal statute, section 844, which is *mandatory*, not permissive. Therefore, under *Webb*'s rationale, the Department is required by Welfare and Institutions Code section 10600 to comply with section 844 of PRWORA.

e. *Constitutional issue not reached.*

The Department contends the preliminary injunction is infirm for the additional reason that the supremacy clause requires the state to comply with section 844 of PRWORA immediately.[6] We do not reach the issue.

■ Our Supreme Court recently reiterated the fundamental and long-standing principle of judicial restraint that " 'we do not reach constitutional questions unless absolutely required to do so to dispose of the matter before us.' " (*Santa Clara County Local Transportation Authority* v. *Guardino* (1995) 11 Cal.4th 220, 230 [45 Cal.Rptr.2d 207, 902 P.2d 225].)

Here, in view of our conclusion that Welfare and Institutions Code sections 10600 and 18903 empower the Department to implement section 844 of PRWORA, it is unnecessary to reach the Department's constitutional argument.

3. *The retroactivity issue.*

■ Having determined the Department is mandated by state law to comply with section 844 of PRWORA, the issue becomes the extent to which the preliminary injunction must be lifted. As discussed above, the relevant provision for purposes of this appeal is section 844, which is the operative provision at the time the appeal is decided. (*Building Industry Assn.* v. *City of Oxnard, supra,* 40 Cal.3d at p. 3.) However, that general principle does not resolve whether the Department is entitled under section 844 to pursue overissuances existing *before* the effective date of the new statute. ■ "A statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date." (*Landgraf* v. *USI Film Products* (1994) 511 U.S. 244, 257 [114 S.Ct. 1483, 1493, 128 L.Ed.2d 229].)

a. *General principles.*

"Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." (*Bowen* v. *Georgetown University Hospital* (1988) 488 U.S. 204, 208 [109 S.Ct. 468, 471, 102 L.Ed.2d 493];

---

[6]The supremacy clause, found in article VI of the United States Constitution states "[t]his Constitution and the Laws of the United States . . . shall be the supreme Law of the Land."

accord, *Landgraf* v. *USI Film Products, supra,* 511 U.S. at p. 272 [114 S.Ct. at p. 1500].)[7]

"[W]hile the constitutional impediments to retroactive civil legislation are now modest, prospectivity remains the appropriate default rule. Because it accords with widely held intuitions about how statutes ordinarily operate, a presumption against retroactivity will generally coincide with legislative and public expectations. Requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits. Such a requirement allocates to Congress responsibility for fundamental policy judgments concerning the proper temporal reach of statutes, and has the additional virtue of giving legislators a predictable background rule against which to legislate." (*Landgraf* v. *USI Film Products, supra,* 511 U.S. at pp. 272-273 [114 S.Ct. at p. 1501], italics omitted.)

Thus, "[w]hen a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." (*Landgraf* v. *USI Film Products, supra,* 511 U.S. at p. 280 [114 S.Ct. at p. 1505].)

 b. *Congress did not expressly prescribe the proper reach of section 844.*

 As indicated, Congress enacted PRWORA on August 22, 1996. However, the new enactment does not specify whether the recoupment provisions of section 844 apply to administrative error overissuances which occurred prior to the effective date of the enactment.

In a supplemental letter brief, the Department advised this court of an administrative notice from the Food and Consumer Service of the USDA. The document is captioned "Administrative Notice 97-25, Questions and Answers on Welfare Reform Legislation: Disqualification and Recipient

---

[7]As stated in *Landgraf,* "*Bowen* itself was a paradigmatic case of retroactivity in which a federal agency sought to recoup, under cost limit regulations issued in 1984, funds that had been paid to hospitals for services rendered earlier, [citation] . . . ." (*Landgraf* v. *USI Film Products, supra,* 511 U.S. at p. 272 [114 S.Ct. at p. 1500].)

Claims." The notice states in relevant part: "Section 844- Collection of Overissuances. [¶] 1. Under the new law, State agencies can automatically collect an agency error claim through allotment reduction. Does this provision apply to claims already established or just newly established claims? *The new provision applies to both newly and already established agency error claims.*" (Italics added.)

 We recognize that although "not necessarily controlling, as where made without the authority of or repugnant to the provisions of a statute, the contemporaneous administrative construction of the enactment by those charged with its enforcement and interpretation is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized. [Citations.]" (*Coca-Cola Co.* v. *State Bd. of Equalization* (1945) 25 Cal.2d 918, 921 [156 P.2d 1]; accord, *People* ex rel. *Lungren* v. *Superior Court* (1996) 14 Cal.4th 294, 309 [58 Cal.Rptr.2d 855, 926 P.2d 1042].)

However, a court must distinguish "between those statements of legislative intent that the agency embodies in formal regulations [fn. omitted] and that, consequently, have the benefit of careful crafting and comment, and those more informal statements that do not necessarily reflect the deliberate focus of the entire agency on the issue of congressional intent. [Citations.]" (*Pennington* v. *Didrickson* (7th Cir. 1994) 22 F.3d 1376, 1383; accord, *Armistead* v. *State Personnel Board* (1978) 22 Cal.3d 198, 204-205 [149 Cal.Rptr. 1, 583 P.2d 744].)

 Here, the administrative interpretation concerning the reach of section 844 is contained in a one-sentence response to a question found within an administrative notice. Further, the notice's assertion "[t]he new provision applies to both newly and already established agency error claims" does not cite any portion of the statute for support. Hence, the statutory interpretation found in this internal administrative notice is not entitled to the degree of deference sought by the Department.

In sum, PRWORA does not specify whether the mandatory recoupment provision of section 844 extends to preexisting overissuances. Therefore, it is necessary to examine whether application of the new recoupment provision to preexisting administrative error overissuances would be retroactive in its effect.

 c. *Application of section 844 to preexisting administrative error overissuances would be retroactive in its effect because it would increase the recipients' liability for past overissuances, and therefore the presumption against retroactivity controls.*

Preexisting federal law was clearly permissive with respect to the involuntary recoupment of administrative error overissuances. Former 7 United

States Code section 2022(b)(2)(B), pertaining to the collection of administrative error overissuances, stated the states *"may* collect" such overissuances by various means. (Italics added.)

In contrast, former 7 United States Code section 2022(b)(1), required states to collect overissuances resulting from fraud. Likewise, former 7 United States Code section 2022(b)(2)(A), provided "[s]tate agencies *shall* collect" overissuances resulting from inadvertent household error claims. (Italics added; see 7 C.F.R. § 273.18(a)(1) (1997) [defining such claims].)

■ "It is a well-settled principle of statutory construction that the word 'may' is ordinarily construed as permissive, whereas 'shall' is ordinarily construed as mandatory, particularly when both terms are used in the same statute. [Citations.]" (*Common Cause* v. *Board of Supervisors* (1989) 49 Cal.3d 432, 443 [261 Cal.Rptr. 574, 777 P.2d 610].) Further, when " ' "different language is used in the same connection in different parts of a statute it is to be presumed the Legislature intended a different meaning and effect." ' [Citation.]" (*Charles S.* v. *Board of Education* (1971) 20 Cal.App.3d 83, 95 [97 Cal.Rptr. 422]; accord, *County of San Diego* v. *Department of Health Services* (1991) 1 Cal.App.4th 656, 661 [2 Cal.Rptr.2d 256].)

■ Thus, under the predecessor to section 844, the recoupment of administrative error overissuances by state agencies was permissive, not mandatory. Because section 844 is mandatory in this regard, the effect of applying the new law to preexisting administrative error overissuances would be to increase recipients' liability for past benefits. Therefore, the presumption against retroactivity requires us to conclude section 844 does not apply to administrative error overissuances which occurred prior to the new enactment. (*Landgraf* v. *U.S.I Film Products, supra,* 511 U.S. at p. 280 [114 S.Ct. at p. 1505].)

4. *The Department may utilize the tax intercept program to collect overissuances which it is otherwise entitled to collect.*

■ As indicated, in addition to enjoining the Department from collecting food stamp overissuances stemming from administrative error, the trial court specifically enjoined the Department from intercepting state income tax refunds to collect such overissuances.

Government Code section 12419.5, the tax intercept provision in issue, provides in relevant part: "The Controller may, in his or her discretion, *offset any amount due a state agency* from a person or entity, against any amount owing that person or entity by any state agency. . . . [¶] For purposes of this section, an amount owing to a person or entity by any state agency shall include any tax refund." (Italics added.)

Aktar argues this tax intercept provision cannot be utilized by the Department to collect food stamp overissuances stemming from administrative error because this provision is limited to collection of moneys "due a state agency," and here, the moneys are being collected on behalf of the federal government.

Aktar's argument is unavailing because the moneys being pursued by the Department are moneys which the Department is required to collect and therefore are an amount due a *state* agency. As indicated, section 844 of PRWORA directs the states to collect overissuances of food stamps. It provides: "[A] State agency *shall* collect any overissuance of coupons issued to a household." (§ 844, subd. (b)(1).) Because the Department is required by federal law to collect overissuances, the moneys being pursued by the Department are moneys "due a *state* agency" (Gov. Code, § 12419.5, italics added) and therefore may be collected by means of the tax intercept.

Nonetheless, Aktar argues the appropriate tax intercept provision is not Government Code 12419.5, but rather, Government Code section 926.8, which states: "*Whenever a governmental agency of the United States*, in the collection of taxes or amounts owing to it, is authorized by federal law to levy administratively on credits owing to a debtor, it may avail itself of the provisions of this section . . . ." (Italics added.) Government Code section 926.8 requires, inter alia, that the federal agency file a certification of facts with the state in support of its claim. Aktar's reliance on Government Code section 926.8 is misplaced because the Department is a *state* agency administering a federal program, not a federal agency.

Having concluded the Department is entitled to resort to Government Code section 12419.5, it is unnecessary to address the Department's contention Aktar failed properly to raise his objection to the tax intercept below.[8]

## DISPOSITION

The petition is granted in part and denied in part. The trial court's order granting the preliminary injunction is modified to allow the Department to pursue collection by involuntary means any food stamp overissuances stemming from administrative error which occurred after the effective date of section 844 of PRWORA. In pursuing such overissuances, the Department also may utilize the tax intercept of Government Code section 12419.5. As modified, the trial court's order is affirmed. Each party to bear its own costs.

Kitching, J., and Aldrich, J., concurred.

---

[8]The record reflects Aktar also argued below that the Department could not invoke Government Code section 12419.5 for the additional reason it had "failed to establish 'an amount due'" and had miscalculated the amount of certain overpayments. The parties have not briefed the issue and therefore we do not address it.

Petition for rehearing was denied on November 26, 1997, and the following opinion was then rendered:

**THE COURT.**—The petition for rehearing in the above-entitled matter is hereby denied and the following supplemental opinion upon denial of rehearing (see e.g., *City of Oakland* v. *Nutter* (1970) 13 Cal.App.3d 752, 775 [92 Cal.Rptr. 347]) is certified for publication:

In the petition for rehearing, the Department contends Administrative Notice No. 97-25 should be given deference because the questions and answers therein, or Q&A's, do not establish new policy but merely constitute interpretations of the clear intent of the legislation. However, as indicated, the Q&A's do not cite any portion of the statute to support the Department's assertion section 844 applies to preexisting administrative error overissuances. Further, as noted, section 844 itself is silent in this respect. The Q&A's cannot vest section 844 with a meaning it clearly lacks. Therefore, the Department's reliance on the Q&A's to enlarge the reach of section 844 is misplaced.

The petition for rehearing also contends that under the pre-PRWORA regulations, collection of administrative error overissuances was mandatory, not permissive, and therefore application of section 844 to preexisting administrative error overissuances would not increase recipients' liability for past benefits. However, as discussed, section 844's predecessor, former 7 United States Code section 2022(b)(2)(B), contained permissive language. Even assuming recoupment was mandatory under the former regulations, the former *statute,* which was permissive, would be controlling, because a regulation which conflicts with congressional language is invalid. (*Dion* v. *Com'r, Maine Dept. of Human Services* (1st Cir. 1991) 933 F.2d 13, 19.) Therefore, because the former statute was permissive in this regard, application of section 844 to preexisting administrative error overissuances would have the effect of increasing recipients' liability for past benefits. Consequently, absent express statutory authorization, retroactive application of section 844 would be inappropriate. (*Landgraf, supra,* 511 U.S. at p. 280 [114 S.Ct. at p. 1505].)

Appellant's petition for review by the Supreme Court was denied February 3, 1998.