BILL LOCKYER Attorney General THOMAS S. LAZAR Deputy Attorney General
THE HONORABLE JACKIE SPEIER, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
May a public entity accept a bid for the construction of a public works project that does not specify the business location of each listed subcontractor but does provide the state contractor's license number of each listed subcontractor from which the business location may be ascertained upon further inquiry?
 CONCLUSION
A public entity may accept a bid for the construction of a public works project that does not specify the business location of each listed subcontractor but does provide the state contractor's license number of each listed subcontractor from which the business location may be ascertained upon further inquiry.
 ANALYSIS
We are informed that the lowest bidder on a recent city public works project failed to specify the business location for each subcontractor listed in the bid. Instead, the bid provided the state contractor's license number for each named subcontractor from which the business address could be ascertained by contacting the Contractors' State License Board ("Board"). Under these circumstances, may the city accept the bid? We conclude that it may.
The Legislature has enacted a comprehensive statutory scheme, the Subletting and Subcontracting Fair Practices Act (Pub. Contract Code, §§ 4100-4114; "Act"),[1] to address "the practices of bid shopping and bid peddling in connection with the construction, alteration, and repair of public improvements" (§4101).[2] Three statutes require our analysis.
Section 4104 states:
 "Any officer, department, board or commission taking bids for the construction of any public work or improvement shall provide in the specifications prepared for the work or improvement or in the general conditions under which bids will be received for the doing of the work incident to the public work or improvement that any person making a bid or offer to perform the work, shall, in his or her bid or offer, set forth:
 "(a)(1) The name and the location of the place of business of each subcontractor who will perform work or labor or render service to the prime contractor in or about the construction of the work or improvement, or a subcontractor licensed by the State of California who, under subcontract to the prime contractor, specially fabricates and installs a portion of the work or improvement according to detailed drawings contained in the plans and specifications, in an amount in excess of one-half of 1 percent of the prime contractor's total bid or, in the case of bids or offers for the construction of streets or highways, including bridges, in excess of one-half of 1 percent of the prime contractor's total bid or ten thousand dollars ($10,000), whichever is greater.
 "(2)(A) Subject to subparagraph (B), any information requested by the officer, department, board, or commission concerning any subcontractor who the prime contractor is required to list under this subdivision, other than the subcontractor's name and location of business, may be submitted by the prime contractor up to 24 hours after the deadline established by the officer, department, board, or commission for receipt of bids by prime contractors.
 "(B) A state or local agency may implement subparagraph (A) at its option.
 "(b) The portion of the work that will be done by each subcontractor under this act. The prime contractor shall list only one subcontractor for each portion as is defined by the prime contractor in his or her bid."
Section 4110 provides:
 "A prime contractor violating any of the provisions of [sections 4100-4114] violates his or her contract and the awarding authority may exercise the option, in its own discretion, of (1) canceling his or her contract or (2) assessing the prime contractor a penalty in an amount of not more than 10 percent of the amount of the subcontract involved, and this penalty shall be deposited in the fund out of which the prime contract is awarded. In any proceedings under this section the prime contractor shall be entitled to a public hearing and to five days' notice of the time and place thereof."
Section 4111 additionally states:
 "Violation of [sections 4100
-4114] by a licensee under [the Contractors' State License Law] constitutes grounds for disciplinary action by the Contractors State License Board, in addition to the penalties prescribed in Section 4110."
The provisions of sections 4104, 4110 and4111 may be examined in light of well recognized principles of statutory construction. "In determining intent, we look first to the words of the statute, giving the language its usual, ordinary meaning." (Hunt v. Superior Court (1999) 21 Cal.4th 984, 1000.) "[W]e consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose. [Citation.]" (Curle v. Superior Court (2001)24 Cal.4th 1057, 1063.) "`Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible.'" (Woods v. Young (1991) 53 Cal.3d 315, 323.)
Applying these principles of statutory interpretation, we find that "the location of the place of business of each subcontractor" must be specified in the bid (§ 4104, subd. (a)(1)), and although certain information concerning a subcontractor may be submitted after the bid submission deadline, such late disclosure is not allowed for "the subcontractor's name and location of business" (§ 4104, subd. (a)(2)(A)).
Listing the state contractor's license number of a subcontractor does not comply with the mandate of section 4104. Even though the subcontractor's current business address may be ascertained by making inquiry of the Board (see Bus. Prof. Code, §7083; Cal. Code Regs., tit. 16, § 16:863, subd. (d)), the Legislature has chosen not to require such further investigation. Instead, the bid must contain "the location of the place of business of each subcontractor."[3]
The failure to identify a subcontractor's place of business in the bid proposal thus constitutes a violation of section 4104. Significantly, the Legislature has specified the consequences for such a violation. Section 4111 makes a violation of section4104 "grounds for disciplinary action by the Contractors' State License Board." It is for the Board to determine what disciplinary action is to be taken against a prime contractor who has failed to identify a subcontractor's place of business in a bid for a public works project. The public entity to which the bid has been submitted does not have a role to play with respect to the Board's responsibilities and duties under section 4111.
Section 4110, however, specifies what the public entity itself may do if a bid is submitted that does not contain the business address of each listed subcontractor. "[T]he awarding authority may exercise the option, in its own discretion, of (1) canceling his or her contract or (2) assessing the prime contractor or penalty in an amount of not more than 10 percent of the subcontract involved." The terms of section 4110 are permissive. The awarding authority is not required to cancel the contract or impose a penalty but "may" do so in the exercise of "its own discretion." (Cf. Bus. Prof. Code, §7028.15, subd. (e) [bid submitted by an unlicensed contractor "shall be rejected"].)
The legislative history of section 4110 fully supports the "plain meaning" of the statute, granting discretionary authority to the public entity in dealing with a violation of section 4104. When the statutory language in question was first enacted, the Legislature declared the following consequence: "the awarding authority shall have the right to cancel the contract." (Stats. 1941, ch. 1283, § 1.) Two years later, this language was changed to "the awarding authority may cancel the contract." (Stats. 1943, ch. 134, § 4106.) In 1945, the language was changed to not only allow the contract to be canceled but "the general contractor shall be penalized to the extent of twenty percent (20%) of the amount of the subcontract involved." (Stats. 1949, ch. 1380, § 6.) In 1961, the language was again changed to give the awarding authority several options:
 "A general contractor violating any of the provisions of this chapter violates his contract and the awarding authority may exercise the option, in its own discretion, of (1) canceling his contract or (2) assessing the general contractor a penalty in an amount not more than ten percent (10%) of the amount of the subcontract involved, and this penalty shall be deposited in the fund out of which the prime contract is awarded, or (3) both canceling the contract and assessing the penalty." (Stats. 1961, ch. 1963, § 1.)
The three options were continued in 1963 (Stats. 1963, ch. 2125, § 11), but in 1969, the statute was again amended, essentially providing as it does today. (Stats. 1969, ch. 332, § 2.)
If the public entity "may" cancel the contract for a failure to list the business address of a subcontractor, it may "in its own discretion" choose not to do so. It follows that the public entity "may" accept or reject the bid in the first instance. The permissive authority to cancel the contract necessarily includes the authority to execute the contract. We are to interpret statutes by giving them "a practical construction" (California Correctional Peace Officers Assn. v. State Personnel Bd.
(1995) 10 Cal.4th 1133, 1147) since "it is presumed the Legislature intended reasonable results consistent with its expressed purpose, not absurd consequences" (Harris v. Capital Growth Investors XIV (1991)52 Cal.3d 1142, 1165-1166).[4]
We conclude that a public entity may accept a bid for the construction of a public works project that does not specify the business location of each listed subcontractor but does provide the state contractor's license number of each listed subcontractor from which the business location may be ascertained upon further inquiry.
[1] All further statutory references are to the Public Contract Code unless otherwise indicated.
[2] "Bid shopping is the use of the low bid already received by the general contractor to pressure other subcontractors into submitting even lower bids. Bid peddling, conversely, is an attempt by a subcontractor to undercut known bids already submitted to the general contractor in order to procure the job." (Southern Cal. Acoustics Co. v. C.V. Holder, Inc.
(1969) 71 Cal.2d 719 fn. 7; see MCM Construction, Inc. v. City and Countyof San Francisco (1998) 66 Cal.App.4th 359, 368-369; E.F. Brady Co. v.M.H. Golden Co. (1997) 58 Cal.App.4th 182, 189-190; Valley CrestLandscape, Inc. v. City Council (1996) 41 Cal.App.4th 1432, 1438; Cal-AirConditioning, Inc. v. Auburn Union School Dist. (1993) 21 Cal.App.4th 655,661, fn. 1.)
[3] "The word `shall' is ordinarily `used in laws, regulations, or directives to express what is mandatory.' [Citation.] The word `may,' by contrast, is usually permissive and denotes `to have power.' [Citation.] . . . [W]here the Legislature employs the term `shall' and `may' in different portions of the same statute, it must be concluded that the Legislature was aware of the different meanings of these words and intended them to denote mandatory and directory requirements, respectively. [Citations.]" (Rice v. Superior Court (1982)136 Cal.App.3d 81, 86; see Common Cause v. Board of Supervisors (1989)49 Cal.3d 432, 443; In re Richard E. (1978) 21 Cal.3d 349, 353-354;Maryland Casualty Co. v. Andreini Co. (2000) 81 Cal.App.4th 1413,1420; Aktar v. Anderson (1997) 58 Cal.App.4th 1166, 1182.)
[4] Of course, if other subcontractor information is omitted in the bid but provided within "24 hours after the deadline" (§ 4104, subd. (a)(2)(A)), no statutory violation would occur and the possible adverse consequences specified in sections 4110 and4111 would be inapplicable.